Francis Bernard AUER; Christopher James Day; James Gilbert Hall; Francis B. Corona; Anthony Pona; Michael T. Indelicato; Richard Buehler; James E. Long; Roy Burgdorf; Donald Swanson; Lionel Abernathy; Kenneth Ackerman; Alfred Adkins; Duane Alexander; Steve W. Alsup; Roger Amelung; James Anderson; Michael Anderson; Edward L. Atherton; Roosevelt Barnes, Jr.; Vernon Barton; Richard C. Bartram; Lee Bates; Darrel Battle; Robert W. Bayless; Michael Beck; Dennis Becker; Joseph D. Beffa; Chris Beffa; Michael Bergman; John Billings; Michael Blanks; Leonard Bober; Donald L. Bohnert; Robert L. Bonzon; Frank Booker; Fred Boyd; Kenneth M. Brad-shaw; Robert Brennan; Joseph Burgoon; John M. Burke; Thomas Burke; Jay Burkhard; Shadrach J. Burks; Al Carter; Michael Caruso; Salvatore Chrum; Earl Cobb; Walter Collier; Donald Columbo; Clarence Contestabile; Phillip P. Cornish; Don Cummings; Stanley Cunningham; Gordon Curd; Thomas J. Daley; Jerome Dampier; Robert Davis; Steve Debisschop; Robert Decker; Manuel Delgado; Edward S. Dickerson; Leman Dobbins; Jerry Dodson; James M. Doggendorf; Stephen Dougherty; Robert Downey; Robert J. Duffin; Daniel Duffy; Judith Dupius; Jimmie Lee Eads; Donald Ebner; Thomas Eckhard; Carl Edwards; Robert E. Farrell; Lawrence Flowers; Jackie Fowler; Leonard G. Forsting; Lynn D. Fox; Tommy Franklin; Michael Frederick; Nick Frederickson; Donald M. Frentzel; Bob Gavin; Robert George; Raymond L. Ghrist; Wilkie Glasener; James Glasscock; Thomas Godfrey; William Gooden; Joel Grant; Edward V. Graves; Darla Gray; Jesse Green; John D. Green; Robert C. Griffin, III; Ward Griggs; Wilburn Grove; Mike Guzy; Dennis Hahn; Kenneth Hahn; Arthur Hammer; Adolphus Hardy, Jr.; Donald Hardy; Steve Harmon; Ralph Harper; Edward Harper; Peggy Harris; Reggie Harris; Henry G. Harris; Gregory Hawkins; Mark Helmholt; Donald Henderson; Ronald Henderson; Leo Hertling; Stephen Hobbs; Susan Hobbs; Joseph Hoeing; Andrew Hollins; Jack W. Huelsmann; Jack Huesgen; Lloyd Huggans; Riley L. Hughes, Jr.; Edmund Ronald Jablonski; Michael Jarvis; Roy Joachimstaler; Cletus Johnson; Joe W. Johnson; John Johnson; Michael Jones; Milton Jones; Richard Jones; Robert W. Jones; Rochelle Jones; Terry Kaelin; David E. Kassebaum; John Kavadas; Elmer Kavanaugh; Kenneth Kegel; Guinn Kelly; Genevieve Kelly; David Keough; Ronald R. Klein; Ronald Klier; Robert Klinger; Jerome Klipfel; Howard Klocke; Rodger G.

---

Kohler; Gus Kolilis; Jeffrey Kowalski; Judith A. Kramer; Joseph Kriska; Robert Kruger; John P. Kuelker; Gary Kukla; Edward Kuntz; William Kusmec; Norman Land; William Landrum; Michael L. Lauer; Thomas Leassner; Frank Lebeau; Audrey L. Lee; Leo Lewis; Joseph Lievin, Jr.; Larry Dean Liggett; J.W. Loftin; Jim E. Long; Jim H. Long; Edward Longinetti; Donna Love; Dave Lowell; Michael Lowry; Edward Lynch; Anthonette Madison; Edward Magee; Thomas J. Magnan; Warren Malugen; Joseph Marcinkiewicz, Jr.; Charles Marvin; Philip F. Maugeri; Clyde McCandless; Michael McCraw; William McCuller; Joseph McCulloch; Joe McDermott; Tim McDonough; George McDonough; Timothy McEntee; John McKenzie; Edward Messmer; Charles Metzner; Stanley Mierzejewski; Eugene Milne; Preston Moore; Richard Moore; James Moran; John J. Moriarty; Pat Morici; Bert Morris; Marlin Mueller; Gerard D. Murphy; Timothy Murphy; Joseph Murphy; Francis J. Meyers; Albert Napier; Paul Neudecker; Worthy Newsom; Daniel Nichols; John R. Nieman; Tom Niemeyer; Beverly Noble–Barnes; Leroy Nunally; Lawrence O'Toole; Dennis Oberdieck; Steve Olish; Ron Owensby; John Page; Manson Parks; Robert Piekutowski; John P. Podolak; Gary Poelling; Dennis Pollihan; William Priest; Joseph Priest; Billy Qualls; Dan Rechtien; Abraham Reddick; Joe Reynolds; Anthony Rice; Jack Eugene Richards; Larry Richards; Jacob D. Richardson; Herbert L. Riley; James Riordan; Simon J. Risk; Louis Rizzuti; Joseph Robinson; Michael T. Roe; Thomas L. Roth; John Roussin; Arthur Ruehl; Anthony Russo; Daniel Saitz; John Salamone; Thomas L. Saliba; Ronald Sanneman; Dana Saunders; John L. Saylor, Jr.; Charles Schaeffer; Robert Scheetz, Jr.; Jon S. Schickedanz; Gary A. Schubert; Timm Seithel; Raymond Sheehan; Michael Siemers; Samuel J. Simon; Daniel G. Simpher; Richard Simpher; Joseph B. Sims; Terrance Sloan; Russell F. Smith; Eugene Smith;

Gwen Spicer; Charles Steele; Vincent R. Stehlin; Paul E. Steinart; William Stevenson, Jr.; Daniel C. Stewart; Paul Stewart; James J. Stika; Donald Storie; Richard Suzy; William G. Swiderski; Gergory Tayborn; John Taylor; Fred Turner; Herman Ubben; George Venegoni; Michael Vierling; Donald Volmert; James Walker; James Walsh; John Walsh; Joseph E. Walsh; Russell Whitener; Dwight D. Wideman; Michael Williams; Rodney Williams; Warren Williams; John G. Wondracheck; James Wurm; Robert Zambo, Jr.; Thomas E. Zipf, Appellants/Cross–Appellees,

v.

David A. ROBBINS, Member of City of St. Louis Board of Police Commissioners and its acting president; Rita M. Krapf, Member of St. Louis Board of Police Commissioners; James F. Conway, Member of St. Louis Board of Police Commissioners; Charles Mischeaux, Member of St. Louis Board of Police Commissioners; Freeman Bosley, Jr., Member of City of St. Louis Board of Police Commissioners, Appellees/Cross–Appellants.

Nos. 94–3355, 94–3534.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1995.

Decided Sept. 8, 1995.

Michael Leibig, Washington, DC, argued (Aarron M. Nisenson, Robert Koster and Rudolfo Rivera, on the brief), for appellant.

John Renick, St. Louis, MO, argued (Judith A. Ronzio, on the brief), for appellee.

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

Plaintiffs appeal the district court's judgment, after a court trial, that twenty-one categories of St. Louis police sergeants are exempt from the requirements of the Fair Labor Standards Act (FLSA). Defendants, all members of the St. Louis Board of Police Commissioners (the board), cross-appeal the district court's finding that two categories of St. Louis police sergeants are partially non-

exempt from the requirements of the FLSA. Because we believe that all of the St. Louis police sergeants are exempt from the FLSA, we affirm in part and reverse in part.

## I. BACKGROUND

The St. Louis police department (the department) is divided into five separate bureaus. The department's basic patrol duties are the responsibility of the Bureau of Community Policing, which is divided into eight districts. The Bureau of Investigation investigates crimes throughout St. Louis. The Bureau of Patrol Support provides support functions to the districts and the Bureau of Community Policing. The Bureau of Administration provides administrative support to the department. And the Bureau of Professional Standards trains and reviews the performance of departmental personnel.

In addition to departmental divisions, there is vertical segregation between the command staff and the patrol staff of the department. The command staff includes all personnel at the rank of lieutenant and higher. Members of the command staff undertake the basic managerial duties of the department, and drive unmarked cars, wear white uniforms and do not regularly patrol the streets.

The department's patrol staff includes patrol officers, investigators and sergeants. Members of the patrol staff provide day-to-day law enforcement services to the public. Members of the patrol staff, including sergeants, patrol the streets of St. Louis, drive marked police cars and possess standard police equipment. Investigators, including sergeants, visit crime scenes, interview witnesses, follow leads, analyze results, make arrests and aid in prosecuting criminal suspects.

Pursuant to state statute, no St. Louis police officer with the rank of sergeant or higher is allowed overtime pay.[1] In October 1988, Francis Auer, Christopher Day and James Hall, all sergeants in the department, filed suit against the department, alleging that it failed to pay them overtime wage benefits in violation of the FLSA. Additional similarly situated plaintiffs, including one lieutenant, joined the suit by filing individual consent forms. The district court granted summary judgment in favor of the police department with respect to Lt. Manuel Delgado, ruling that (1) any officer of the rank of lieutenant or higher was an exempt administrator; and (2) lieutenants and sergeants were salaried, not hourly employees. At the time of trial, there were over 200 plaintiffs, all of whom were either past or present sergeants in the department.

Plaintiffs' claims proceeded to a five-day bench trial. The district court found that sixteen sergeant positions were exempt from the FLSA under the executive exemption,[2] three sergeant positions were exempt under the administrative exemption,[3] and one sergeant position was exempt under the combined exemption.[4] The district court also found that two sergeant positions were partially nonexempt from the FLSA.[5] Both parties have appealed the decision of the district court.

## II. DISCUSSION

As a general rule, the FLSA requires employers to pay overtime compensation to em-

---

1. Mo.Rev.Stat. § 84.160(4) (Supp.1995) provides that:

 Each of the above mentioned salaries shall be payable in biweekly installments. Each officer of police and patrolman whose regular assignment requires nonuniformed attire may receive, in addition to his salary, an allowance not to exceed three hundred sixty dollars per annum payable biweekly. *No additional compensation or compensatory time off for overtime, court time, or standby court time shall be paid or allowed to any officer of the rank of sergeant or above.* (emphasis added).

2. These sergeant positions are: precinct; detective; desk; intelligence; homicide; auto theft/

fraud division; narcotics/vice division; sex crimes/child abuse; warrant/fugitive division; public affairs; mounted patrol/mobile reserve/canine unit; prisoner processing; identification section; traffic safety; academy and evidence technician unit.

3. These sergeant positions are: job performance, internal affairs and quality control sergeants.

4. This position is the special assignments sergeant.

5. These positions are the bomb and arson squad and the traffic safety sergeant while acting as an accident reconstruction squad sergeant.

ployees for hours worked in excess of a forty-hour work week. *See* 29 U.S.C. § 207 (1988). However, under the FLSA, an employer does not have to pay overtime compensation to an employee working in "a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) (1988). The FLSA delegates the responsibility to define these terms to the Secretary of Labor. 29 U.S.C. § 213(a)(1).

The regulations provide a "short test" and a "long test" to determine whether an employee falls under either the executive or the administrative exemption. 29 C.F.R. §§ 541.1, 541.2. Under either test, the board bears the burden of proving that the exemption applies. The "short test" applies if an employee is paid a salary of at least $250 per week. Plaintiffs stipulated that they received at least $250 per week in compensation but argue that they were not paid on a salary basis. Accordingly, the first question we address is whether the sergeants were compensated on a salary basis.

## A. Salary Test

■ Plaintiffs argue that the district court erred in determining they are salaried employees because they may be subject to disciplinary reductions in their pay. Plaintiffs point to the testimony of Sergeant Michael Guzy that he received a two-day suspension without pay for violating the city's residence requirement.

■ Under the regulations, an employee is not salaried if he may receive deductions from his salary "because of variations in the quality or quantity of the work performed." *McDonnell v. Omaha, Neb.,* 999 F.2d 293, 296 (8th Cir.1993) (quoting 29 C.F.R. § 541.118(a)),[6] *cert. denied,* — U.S. —, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994). In other words, an employee is entitled to overtime compensation only if his compensation is not subject to reductions based upon the quality or quantity of the work performed.

*Hurley v. Oregon,* 27 F.3d 392, 394 (9th Cir.1994).

■ The mere possibility of an improper deduction in pay does not defeat an employee's salaried status. *McDonnell,* 999 F.2d at 296. In *McDonnell,* we refused to hold that fire chiefs were nonsalaried because they could be subject to a reduction in compensation if they were absent from work for less than one day unless they were able to use annual leave, sick leave or other leave with pay entitlement. *Id.* The evidence presented in *McDonnell* showed that no chief had ever received such a deduction in pay. Accordingly, under *McDonnell,* we will not hold that an employee is not salaried if there is only a contingent possibility that an improper deduction may occur.

■ The regulations, however, provide an exception to the rule that an employee subject to pay reductions based on the quality or quantity of work is not salaried: "Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status." 29 C.F.R. § 541.118(a)(5). Conversely, an employee is considered nonsalaried, and thereby entitled to overtime compensation, if his compensation is subject to reduction for a violation of any other rules. *Hurley,* 27 F.3d at 394. A safety rule of major significance includes "only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines." 29 C.F.R. § 541.118(a)(5). Sergeant Guzy's violation of the department's city residency requirement is not a major safety rule under the regulation's definition. Arguably, the department's two-day pay deduction from Sergeant Guzy would require him to be treated as a nonsalaried employee.

■ A one-time deduction, however, does not automatically require the determination that all sergeants are nonsalaried. The regulations provide for a "window of

**6.** The Ninth Circuit held that this regulation is invalid as applied to the public sector. *Service Employees Int'l Union, Local 102 v. San Diego,* 60 F.3d 1346, 1353–54 (9th Cir.1995), *pet. for reh'g en banc filed* (July 27, 1995). However, the Seventh Circuit holds that the regulation is valid as applied to the public sector because it is rationally related to the objectives of the FLSA. *Mueller v. Reich,* 54 F.3d 438, 442 (7th Cir.1995). We need not address this question, however, and assume, without deciding, that the regulation validly applies to public sector employees.

correction" and state that "[t]he effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case." 29 C.F.R. § 541.118(a)(6). The regulations further state that if "a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." *Id.* In other words, "the 'window of correction' allows employers to treat otherwise eligible employees as salaried, regardless of the employer's *one-time* or unintentional failure to adhere to § 541.118(a)'s requirements." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 616 (2d Cir.1991) (emphasis added), *cert. denied,* —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992).[7] The "window of correction" is not available if the employer has a settled policy of making improper deductions from compensation. *Id.* Under the unique circumstances surrounding Sergeant Guzy's disciplinary loss of pay, we believe that the department made a one-time deduction, and did not make the disciplinary deduction from Sergeant Guzy pursuant to an established policy.

In 1990, Sergeant Guzy faced termination by the department for violating its city residency requirement. In lieu of possible termination, Sergeant Guzy agreed to waive his right to a hearing and accept a two-day suspension without pay. Subsequent to this incident, on June 1, 1991, the department changed its policy to provide that termination is the exclusive disciplinary sanction for violation of the residency requirement. Accordingly, the Guzy disciplinary incident was a one-time incident and can never reoccur because the department has since changed its policy. Finally, it fits within the "window of correction's" express requirement that the deduction be "for reasons other than for lack of work," because it was imposed as a disciplinary measure. Thus, we will not reverse the district court's determination that all sergeants were paid on a salary basis. In such a situation, the regulations simply require the employer to reimburse the employee for the lost wages. 29 C.F.R. § 541.118(a)(6).

## B. Executive Exemption

We now address whether the district court properly concluded that (1) the executive exemption applied to fifteen categories of sergeants, thus removing them from the overtime pay requirements of the FLSA, and (2) two categories of sergeants were partially exempt executives, and partially nonexempt from the FLSA. Because the sergeants were salaried employees, earning at least $250 per week, this question turns on whether both prongs of the "short test" apply.[8]

---

7. Because the regulation is written in the disjunctive, it is not material that the deduction from Sergeant Guzy's pay was not inadvertent, as long as it was made for reasons other than lack of work. *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 433 (11th Cir.1994).

8. If the sergeants earned less than $250 per week, the board would have to satisfy a more stringent test to establish that plaintiffs were exempt as executives—the so-called "long test." The elements of the long test are:

The term *employee employed in a bona fide executive ... capacity* in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided,* That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities....

Under the short test, an employee is an exempt executive if the employer can show that the employee's "primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees...." 29 C.F.R. § 541.1(f). Plaintiffs concede that they "regularly direct the work of two or more employees." Accordingly, resolution of this issue depends upon whether the sergeants had management as their primary duty.

■■■ We review the district court's finding of the amount of time devoted and the significance of the sergeants' managerial duties for clear error. The district court's determination that the exemption applies is a legal determination that we review de novo. *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986); *Shockley v. Newport News,* 997 F.2d 18, 26 (4th Cir.1993). Plaintiffs argue that insufficient evidence exists to support the district court's finding that their primary duty was management. As a corollary to this argument, they also argue that the district court failed to make sufficient findings of fact regarding the sergeants' particular job duties. Finally, plaintiffs argue that the district court committed reversible error by concluding that the amount of time spent on managerial, as opposed to nonmanagerial, duties was irrelevant. We address the time spent on duties argument first.

■■■ Determining whether an employee's primary duty is management depends upon "all the facts in a particular case." 29 C.F.R. § 541.103. As a general rule, the regulations provide that if an employee spends over 50% of his time on managerial duties, his primary duty is management. *Id.* However, if an employee spends less than 50% of his time on managerial duties, he is not presumed to have a primary duty of nonmanagement. *Id.* In *Murray v. Stuckey's, Inc.,* we held that a finding with respect to the amount of time spent on nonmanagerial job duties is not a determinative factor under the regulations

29 C.F.R. § 541.1(a)-(f).

when the employee spends less than 50% of his time performing managerial duties. 939 F.2d 614, 618 (8th Cir.1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992). We agree with plaintiffs that under the regulations and *Murray,* time still remains a relevant factor.

■■■ We do not read the district court's opinion as disregarding the time that plaintiffs spent on particular job duties. In determining whether plaintiffs were exempt from the provisions of the FLSA, the district court examined each sergeant category's job duties to determine its primary duty, considering four factors:

1. The relative importance of the managerial duties as compared with other types of duties;

2. The frequency with which the employee exercises discretionary powers;

3. The employee's relative freedom from supervision;

4. The relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor.

Addendum at 20. The district court's four-prong test correctly identified the pertinent factors to determine whether a sergeant's primary duty is management if he spends less than 50% of his time performing managerial duties. *See* 29 C.F.R. §§ 541.102, 541.103; *Murray,* 939 F.2d at 618. With respect to all of the sergeant categories, the district court determined that the fourth factor—the salary factor—of the four-prong test weighed in favor of holding the sergeants' primary duty was management. The court found that in 1979, when the Missouri legislature determined it would no longer pay sergeants overtime compensation, it raised their compensation 8%. It also found that a beginning sergeant's compensation was 42% greater than a beginning turnkey officer and 34% greater than a beginning patrol officer. Accordingly, it found that all sergeants received a higher compensation when they performed the same duties as nonexempt patrol officers and turnkey officers.

While the district court stated that "the amount of time spent conducting those duties is irrelevant in the Eighth Circuit as long as the primary duty is management," Addendum at 22, we do not take these statements to mean that the district court completely disregarded the time spent performing managerial, as opposed to nonmanagerial, duties. Rather, the district court's opinion should be construed as implicitly determining that no sergeant spent 50% of his time performing managerial duties. As such, the district court properly analyzed the sergeants' job duties under the test set forth in the regulations, and acknowledged by us in *Murray,* to determine whether an employee's primary duty is management if he spends less than 50% of his time performing managerial duties. We therefore reject plaintiffs' argument that the district court's decision must be reversed because it disregards the amount of time spent on managerial, as opposed to nonmanagerial, duties. We also reject plaintiffs' argument that the district court must be reversed because it did not make factual findings setting forth the amount of time spent performing exempt, as opposed to nonexempt, duties. We now turn to the specific sergeant positions to determine if sufficient evidence exists to determine that their primary duty is management, and they are therefore exempt as executives.

### 1. Precinct Sergeants

■ The district court made numerous factual findings with respect to precinct sergeants and concluded that managerial duties far outweigh any other duties performed by precinct sergeants and are frequently and constantly exercised. The court found that "[r]ank and file police officers look to the sergeants for guidance and direction, while senior officers rely upon them for accountability and control of their areas and do not closely supervise their activities." Addendum at 23. The court also found that precinct sergeants do not primarily perform routine tasks like arrests and ticketing, but rather take charge of crime scenes, direct activity and ensure that their area is patrolled and secure. Additionally, the police manual provides that a precinct sergeant is responsible for: (1) supervising the officers assigned to

his precinct; (2) crime prevention within his precinct; (3) inspecting his subordinate officers during roll call to ensure, among other things, that they are physically and mentally fit for duty and are properly assigned and understand their assignments; (4) taking necessary corrective action when he notices any deficiencies in his subordinates; (5) patrolling his precinct to ensure that his officers are at their proper assignments; and (6) for any reports that may be required. Appellants' App. at 40–41.

Plaintiffs do not argue that any of the district court's factual findings are clearly erroneous. However, they point out that precinct sergeants do not have authority, without a lieutenant's permission, to change the work assignments of the officers they supervise. Appellants' App. at 206. Plaintiffs also point out that a radio dispatcher assigns patrol cars to crime scenes and precinct sergeants typically have no authority to change these assignments. From this, plaintiffs argue that precinct sergeants are more akin to working supervisors, who are not exempt from the FLSA, than exempt executives. *See Shockley,* 997 F.2d at 26.

The district court correctly determined that precinct sergeants' primary duty is management. The sergeants are compensated at a higher salary range than their subordinates. The precinct sergeants' duties, as delineated in the police manual, clearly establish that managing subordinate patrol officers constitutes their primary duty. Precinct sergeants do not, as plaintiffs attempt to argue, perform identical tasks as their subordinates. Although their duties may sometimes overlap with those of their subordinates, precinct sergeants are responsible for managing the precinct for which they are in charge. We believe the district court had sufficient grounds to conclude that the precinct sergeants had more responsibility and discretion over their subordinates than a "working foreman" does. *Id.* at 26–27. Thus, we affirm the decision that precinct sergeants are exempt executives.

### 2. Detective Sergeants

■ The district court found that a detective sergeant oversees the work of thirteen to

sixteen detectives. It found that the detectives must provide their sergeant with all information concerning police matters and that all interrogations, interviews and investigatory procedures conducted by detectives are scrutinized and reviewed by a detective sergeant. The court further found that detective sergeants have discretion to ensure that the caseload is constantly moving. The court observed that although a detective sergeant may sometimes become directly involved in investigating matters, his primary duty is to manage and oversee the entire caseload and to report those results up the chain of command.

We have reviewed the record and do not believe that any of the district court's factual findings are clearly erroneous. These findings amply demonstrate that the detective sergeants' primary duty was management.

### 3. Desk Sergeants

■ The district court found that the desk sergeants basically manage the station house, overseeing incoming calls and walk-in traffic and delegating other officers to respond. It also found that the desk sergeants' responsibilities include ensuring the satisfactory performance of both civilians and officers within the station house, and they are accountable for all assets and facilities within the station and prisoners in the holdover. Area desk sergeants must maintain the desk "book" of arrests made and other station business such as complaints filed; prisoner processing, maintenance and control; forwarding police reports and other forms and information; and training and supervising other desk and booking personnel. The court found that these sergeants have a great deal of discretion in performing their duties and are minimally supervised by their superiors.

Plaintiffs do not argue that any of the district court's factual findings are clearly erroneous; rather, they inform us that over half of a desk sergeant's day is spent answering the phones and taking walk-in complaints, which are the same duties that are performed by other police officers and civilians. Where an employee spends less than 50% of his time performing managerial

duties, as noted above, time is a relevant, but not dispositive, factor. The district court's opinion found that all of the factors indicating that management is the primary duty were present: managerial duties were more important when compared with other types of duties; discretionary powers were frequently exercised by the desk sergeant; he is relatively free from supervision; and he receives higher compensation than the wages paid other employees for the same kinds of nonexempt work. Thus, we agree with the district court that desk sergeants have management as their primary duty, although they may devote less than 50% of their time to managerial duties.

### 4. Intelligence Sergeants

■ The district court noted that the intelligence unit gathers information on criminal activity within the St. Louis area. Each intelligence sergeant is assigned to one of three units containing six detectives. The court found that an intelligence sergeant's responsibilities include collecting data, preparing reports and analyses, briefing police personnel on current crime situations and supporting investigations. It also found that intelligence sergeants are "minimally supervised, exercise near unfettered discretion and enjoy a great deal of autonomy." Finally, it found that these sergeants' work product is evaluated for professionalism and the overall effectiveness of their respective units.

Plaintiffs do not challenge any of the district court's factual findings for clear error. These factual findings are more than sufficient to establish that the investigative sergeants' primary duty is management. We affirm the district court's decision that intelligence unit sergeants are exempt executives.

### 5. Homicide Sergeants

■ Homicide sergeants manage teams of investigators. The district court found that the homicide sergeants' primary duty is to oversee the investigations of reported killings and manage a caseload. The court found that the "hands on" investigative work performed by homicide sergeants is tangential to their primary duty.

■ We reject plaintiffs' argument that these factual findings are not specific enough.[9] We disagree with plaintiffs' assertion that these findings do not reference homicide sergeants' specific duties; to the contrary, it appears to us that the district court found their duties to be the oversight of homicide investigations and caseload management.[10]

The evidence introduced at trial showed that homicide sergeants are in charge of the investigation, review reports, perform evaluations on the detectives they supervise and have the authority to adjust the hours of subordinate detectives. Appellees' App. at 178–80. A homicide sergeant is evaluated on the basis of his supervisory skills, not his investigative skills. Testimony at trial indicated that a homicide sergeant's primary duty is to supervise an investigation, ensuring that evidence is collected properly, witnesses are interviewed properly, the area is canvassed properly, the correct measurements are taken where the body was located and to determine the cause of death with the medical examiner's office. Id. at 181. We believe this evidence is more than sufficient to support the district court's factual findings and agree that management is the primary duty of the homicide sergeants.

## 6. Auto Theft/Fraud Division Sergeants

■ The district court analogized the auto theft/fraud division sergeants to the homicide sergeants and found that their principal duty is caseload management and directing the investigations of stolen automobiles and reports of fraudulent activity. These sergeants assign cases to the officers under their command. Appellees' App. at 135. These sergeants do not carry their own caseload, and rarely write reports. Id. at 137. An auto theft sergeant's evaluation is based upon her managerial, not investigative, skills. Id. at 138. The sergeants also evalu-

ate their officers, are expected to handle any grievances that may arise and initiate discipline if required. Id. at 139. We believe this evidence is sufficient to determine that the sergeants' primary duty is management.

## 7. Narcotics/Vice Division Detectives

■ The district court found that a narcotics sergeant manages eight officers and that a vice sergeant manages sixteen officers. It found that their primary duty is to manage their respective departments, rather than directly handling cases.

Plaintiffs argue that these sergeants spend approximately three-fourths of their time on the street with their subordinates, investigating crimes and arresting criminals, and only one to two hours per day reading reports of criminal activity and reviewing criminal complaints from citizens. While on the street, however, the sergeants are supervising the work of their officers. Appellants' App. at 351. These sergeants assign cases to subordinates, do not carry their own caseload and plan operations with the captain's assistance. Id. at 348–50.

We do not believe that plaintiffs have demonstrated that the district court's finding of the significance of these sergeants' managerial duties is clearly erroneous. Accordingly, sufficient evidence exists to support the district court's conclusion that the executive exemption applies to the narcotics and vice sergeants.

## 8. Sex Crimes/Child Abuse Sergeant

■ The sergeant assigned to the sex crimes/child abuse unit is in charge of eight officers. The district court found that this sergeant's primary duty, similar to homicide, narcotics and vice, is to manage the unit's caseload and the officers reporting to the unit. Upon a thorough examination of plain-

9. We note that neither side filed any motion pursuant to Rule 52(b) for the district court to amend its findings or to make any additional findings.

10. Even assuming that the district court's factual findings were incomplete, "if the record sufficiently informs the court of the basis for the trial court's decision on the material issue, in question

a remand is unnecessary." Charles v. Allstate Ins. Co., 932 F.2d 1265, 1269 (8th Cir.1991) (internal quotations and citation omitted). We may affirm a decision based upon incomplete factual findings "if there can be no genuine dispute about how the trial court actually resolved the facts missing from its express findings." Id. (internal quotations and citation omitted).

tiffs' brief, we found no specific challenge to this particular finding, and we decline to address it further.

### 9. Warrant/Fugitive Division Sergeant

█ The district court found that the warrant/fugitive division maintains a liaison with the courts to ensure identification and arrest of persons with outstanding criminal or other violations of the law, and to recapture escaped prisoners. One sergeant acts as a court liaison for scheduling, another supervises four officers in the fugitive section, and two sergeants supervise nine officers in the transport pool and four officers in the Fugitive Apprehension Strike Team. The court found that these sergeants' primary duty is management, although they may accompany their officers on field activities. The court found that when in the field, the sergeants exercise a great deal of management and discretion over the officers regarding how the capture or transport is organized.

Plaintiffs do not argue that any of these findings are clearly erroneous. Thus, we conclude that sufficient evidence exists to conclude that the executive exemption applies to these sergeants as well.

### 10. Public Affairs Sergeant

█ The district court made detailed factual findings regarding the public affairs sergeant. It found that ten officers report to this sergeant. The public affairs sergeant is responsible for coordinating all media, community relations and information dissemination functions. It further found that the ten officers working under the sergeant prepare the actual work product. The court determined that the sergeant's principal job is to "interact directly with command authority regarding how these publicity requirements will be conducted and then translate them into staff assignments."

Plaintiffs do not challenge any of these factual findings as clearly erroneous. Rather, they argue that approximately 80% of the sergeant's time is spent performing the same tasks as his subordinates perform. However, as noted above, time is only one relevant factor. In light of the district court's factual findings, sufficient evidence exists to establish that the public affairs sergeant falls within the executive exemption.

### 11. Mounted Patrol/Mobile Reserve Canine Units Sergeants

█ The district court found that the primary duties of the mounted patrol sergeant are duty roster preparation, scheduling, reviewing patrol officer fittings and equestrian equipment, and evaluating and appraising officer performance. The court also found that this sergeant has "fairly wide berth" to make assignments of mounted patrols in St. Louis park areas. The court found that the primary duty of the mounted patrol sergeant is to manage, coordinate and report the activities of the mounted patrol.

The court noted that the mobile reserve unit consists of officers who deal with crime in highly concentrated areas at peak times. This unit has two sergeants who are each in charge of ten officers. The court noted that although assignments are received from higher command authority, the sergeants have discretion to implement them so as to most effectively utilize their officers and resources.

The court found that the canine unit sergeants' principal duties involve oversight of operations, coordinating scheduling, assigning officer activities and ensuring proper care and handling of the animals. The court found that the sergeants "provide little in the way of direct patrol of the streets, and are accountable for all administrative and performance aspects of the unit."

Plaintiffs do not challenge any of these factual findings by the district court as clearly erroneous. These findings are sufficient to support the district court's conclusion that these sergeants are exempt executives because they indicate that the sergeants' primary duty is managerial.

### 12. Prisoner Processing Sergeant

█ The prisoner processing unit coordinates the arrest, custody, paperwork, administration and release of detained or incarcerated individuals. One sergeant serves as Deputy Commander, with the primary re-

sponsibility of overseeing nine officers, two turnkeys, and over eighty civilians; plaintiffs stipulate that his position is exempt. Five more sergeants serve as platoon leaders. These six sergeants' duties involve managing and overseeing the smooth operation of the unit. The court found that each sergeant has overall operational responsibility and accountability for prisoner care.

Evidence at trial indicated that the platoon sergeants prepare duty rosters and time sheets, and review arrest registers. Appellants' App. at 176. The platoon sergeant supervises and coordinates the activities of subordinates, arrest processing and release of prisoners.

We do not believe that any of the district court's factual findings are clearly erroneous. We believe these findings are more than sufficient to determine that the executive exemption applies.

### 13. Identification Section Sergeant

■ Sergeants in the identification section oversee the latent fingerprint unit and the evidence technician unit. The district court found that their principal duty is to coordinate the smooth and timely delivery of identification requests made to the unit, not to actually fingerprint people or process identification requests. Based upon our review of plaintiffs' brief, we do not believe they alleged error with respect to these findings. These findings demonstrate that the identification sergeants' primary duty is management.

### 14. Academy Sergeants

■ Two sergeants are assigned to the academy: one is in charge of basic training and the armory; the other conducts in-service training and is responsible for the Fitness Center. The district court found that five officers report to the basic training/armory sergeant and that four civilians and one officer report to the in-service sergeant. The court found that the primary duties of the basic training/armory sergeant are to develop programs, create schedules, maintain records for officer basic training, and to control the armory's arms used for firearms training. The court found that the in-service

sergeant's primary duty is "to implement training and fitness programs for current police personnel as implemented and managed through the civilians and officers that report to this position."

Plaintiffs do not contend that any of the factual findings concerning the in-service/fitness center sergeant are clearly erroneous. Although plaintiffs concede that the basic training/armory sergeant is primarily responsible for ensuring the smooth running of the armory, they argue he should be nonexempt because he spends over 75% of his time working as an arms expert, technician and instructor. As noted previously, the regulations do not embrace a strict temporal analysis to determine if the executive exemption applies; time is only one factor in the mix. This sergeant's managerial duties are more important than his other duties because he is responsible for the overall operation of the armory. The development of programs and schedules by this sergeant require the exercise of discretion. As noted previously, the sergeants' pay is markedly higher than a patrol officers. Based upon these factors, the district court correctly determined that the armory sergeants are exempt from the FLSA as executives.

### 15. Evidence Technician Unit Sergeant

■ The court found that the evidence technician unit is a component of the identification section. The unit is comprised of twelve specialists reporting to one sergeant. The court found that the specialists are responsible for responding to crime scenes and gathering physical and other types of evidence. The court found that the sergeant's primary duty is to act as a manager and direct the inflow of requests and for responses to crime scenes, to assign personnel within the unit, and caseload administration. Plaintiffs do not argue that any of these factual findings are erroneous. These factual findings are more than sufficient to establish that this sergeant's primary duty is management.

### 16. Traffic Safety Division Sergeants

The district court found that traffic safety sergeants were partially nonexempt from the

FLSA for the portion of time that they worked as accident reconstruction specialists. The court noted that the unit has four sergeants who report to a lieutenant. The sergeants direct the activities of Platoons A and B, each of which contain nine patrol officers; Platoon C, the night watch platoon with two officers; and the motorcycle unit. The sergeant in charge of the motorcycle unit is also responsible for the accident reconstruction team, which has eight officers. The court found that all of the traffic safety sergeants are required to serve relief duty. Relief duty entails rotating their responsibilities and substituting for reasons of illness or vacation. The court found that the sergeants managed the respective components of the traffic safety unit and administer the diverse traffic control activities of the officers under their command.

The court found that the primary duty of sergeants when working as accident reconstruction specialists is to perform the actual work of measurement, analysis and calibration necessary to reenact vehicular accidents involving criminal charges. The court further found that this sergeant is on call on a twenty-four-hour basis, including personal and vacation time, to perform accident reconstruction work. The court found that when any sergeant was performing these duties, he was not an executive exempt from the FLSA's provisions, and entitled to overtime compensation.

■ The board appeals the district court's decision that these sergeants are partially nonexempt from the provisions of the FLSA. The board argues that an employee is either exempt or nonexempt from the provisions of the FLSA. We agree. The FLSA provides that "an employee employed in a bona fide executive, administrative, or administrative capacity" is exempt from its provisions. 29 U.S.C. § 213(a)(1). Furthermore, as noted above, determining whether or not an employee falls under the executive exemption requires an analysis of whether his primary duty is management. If so, the employee is exempt as an executive; if not, the employee is nonexempt and entitled to overtime compensation. This test provides an all or nothing method for determining whether

an employee who performs some management and some nonmanagement job duties is entitled to overtime compensation. The parties have not cited, and we are not aware of, any case which holds that an employee is entitled to overtime compensation under the FLSA for those portions of job duties that are not exempt. Accordingly, the district court erred by determining that the traffic unit sergeants are partially exempt from the provisions of the FLSA.

■ Our conclusion that the regulations prevent an employee from being partially exempt as an executive is bolstered by the FLSA's explicit grant of a partial exemption to public agencies with respect to certain law enforcement and fire protection activities. 29 U.S.C. § 207(a)(1). Under section 7(k) of the FLSA, which is not applicable in this case, police officers are entitled to time and one-half pay only after they have worked approximately forty-three hours in a seven-day work week. *Avery v. Talladega, Ala.,* 24 F.3d 1337, 1342 (11th Cir.1994). This section indicates that Congress will grant a partial exemption if it so desires, and we will not infer a partial exemption that appears to contradict the regulations.

■ The board argues that a remand is unnecessary, because it is evident from the district court's factual findings that the traffic unit sergeants' primary duty is management. We agree. The district court found that the primary duty of the traffic unit sergeants was to manage each of the component parts of traffic safety and to administer the diverse traffic control activities of the officers under their command. Plaintiffs do not challenge this finding as clearly erroneous. Furthermore, this finding is in keeping with the sergeants' duties as delineated in the police manual. The police manual lists the traffic safety sergeants' primary duty as the supervision and coordination of officers engaged in enforcing traffic regulations, providing assistance to motorists and controlling traffic. Appellees' App. at 343. Typical duties, as listed in the police manual, are: (1) supervision of officers assigned to the unit; (2) reviewing reports and arrests made by subordinate officers; (3) assigning officers as needed to direct traffic at incidents of fires,

disasters and major accidents; (4) informing the public, media and other members of the department with regard to traffic ordinances and statutes; (5) preparing administrative reports; (6) making various public speaking engagements to community organizations; and (7) performing any related duties as required. *Id.*

Under these circumstances, we believe that the traffic safety sergeants' primary duty was management although the sergeant in charge of the motorcycle platoon and accident reconstruction spent some portion of his time performing nonexempt work. The traffic safety sergeants had a higher salary range than their subordinates, although their actual salary may be lower depending upon experience. Viewing the traffic safety sergeants' responsibilities as set forth in the police manual indicates that their primary duties are managerial, as the district court found. Accordingly, the traffic safety sergeants are exempt executives, and the district court erred when it determined that the sergeants were partially nonexempt for the portion of time that they spent performing accident reconstruction work. *See Shockley,* 997 F.2d at 26–27.

### 17. Bomb and Arson Sergeant

▆▆ The bomb and arson unit consists of one sergeant who is in charge of six officers. The district court found that the key responsibility of this unit is responding to explosive or arson threats, and investigating explosions and arson fires in coordination with other local, state or federal agencies. The district court noted that certification is required to handle explosives and that four officers in the unit, including the sergeant, are certified. The district court found that in addition to the sergeant's supervisory responsibilities, he must also directly respond to incidents. The court found that while on calls, the sergeant

serves in a nonexempt capacity, and is therefore only partially exempt from the FLSA.

The board appeals the district court's determination that the bomb and arson sergeant is partially nonexempt from the FLSA when responding to calls because an employee must be either exempt or nonexempt. We previously addressed this issue with respect to the traffic safety sergeants. We hold that the district court erred in determining that the bomb and arson sergeant may be partially exempt from the FLSA for the same reasons that it erred in holding the traffic safety sergeants partially exempt, which we need not reiterate.

Again, the board argues that a remand is unnecessary because the district court found that the primary duty of the bomb and arson sergeant was management. We agree. The district court found that the bomb and arson sergeant is in charge of the six officers within the unit and, in addition to his supervisory functions, he also performs nonexempt work while on calls. The sergeant does not carry his own caseload. Appellees' App. at 137. He provides periodic training to his detectives, evaluates their performance and initiates any discipline or reward of good behavior as needed. *Id.* at 139–40. The bomb and arson sergeant spends a high percentage of his time in the office. *Id.* at 141. Accordingly, since this sergeant's primary duty was management, he is an executive exempt from the provisions of the FLSA.

### C. Administrative Exemption

We now consider whether the district court properly concluded that three categories of sergeants were exempt from the provisions of the FLSA as administrators. Because the sergeants are salaried employees earning at least $250 per week, this question turns on whether both prongs of the "short test"[11] apply. Under the regulations, an

---

**11.** If the sergeants earned less than $250 per week, the board would have to satisfy a more stringent test to establish that plaintiffs were exempt as administrators. The elements of the long test are:

The term *employee employed in a bona fide ... administrative ... capacity* in section 13(a)(1) of the Act shall mean any employee:
(a) Whose primary duty consists of either:

(1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or
(2) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly

employee is an exempt administrator if his "primary duty consists of the performance of [office or nonmanual work directly related to management policies or general business operations of his employer], which includes work requiring the exercise of discretion and independent judgment." *Shockley,* 997 F.2d at 28 (citing 29 C.F.R. § 541.2(e)). The principles utilized in determining whether an employee's primary duty is management also apply to determine whether an employee's primary duty is administration, albeit focused on administrative rather than managerial duties. *Id.* (citing 29 C.F.R. § 541.206(b)). In other words, under the short test, determining whether an employee is employed in an administrative capacity "requires proof either that the employee spends half his time on administrative duties or that administrative duties have special significance relative to the employee's other duties." *Id.* Administrative duties include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b).

The district court found that each of the three categories of sergeants claimed by the department to be exempt administrators admitted accountability for at least two or more of the administrative duties outlined in the regulations. Accordingly, in its findings of fact, the court focused only upon the primary duty of each of the separate categories. We now examine each category in turn.

## 1. Job Performance Section Sergeant

■ The court found that one sergeant manages the job performance section. The primary responsibility of the job performance section is the identification of, and provision of, counseling or other support services for employees who have administrative or duty related problems. This section provides a "first line response" for officers who may be showing signs of stress or other job related impairments. The court found that the sergeant was exempt as an administrator "due to the almost quasi-professional role that the sergeant undertakes with respect to evaluating and resolving employee problems." Addendum at 34. After examining the plaintiffs' brief, we find no specific challenge to these factual findings. These findings are more than sufficient to establish that this sergeant is exempt as an administrator.

## 2. Internal Affairs Division Sergeant

■ The Internal Affairs Division (IAD) helps maintain the department's integrity by ensuring, through investigation, that it is free of criminal conduct or other types of legal or ethical violations. The court found that the unit is staffed with one captain, who serves as commander, fourteen sergeants and one civilian. The court found that one sergeant serves as Deputy Commander, and is mainly responsible for assigning the caseload.

The court found that sergeants were selected to staff the IAD because their experience and rank of sergeant confers a level of authority allowing their job performance to be relatively free from resistance. The court found that IAD sergeants are selected based upon their superior oral and written communication skills, with demonstrated proficiency in comprehension of department regulations and procedures. The court further found

related to the academic instruction or training carried on therein; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or

(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or

(3) Who executes under only general supervision special assignments and tasks; and

(d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

(e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ($130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities.

29 C.F.R. § 541.2(a)-(e)(1).

that the captain selects officers "who can think on their feet" and upon whom he can rely for advisement. The court specifically found that IAD sergeants have more discretion than other sergeants, with almost complete discretion to determine whether to proceed upon any case they receive. If the sergeant decides to proceed, he exercises independent judgment to determine the violation or charges to be filed against the offending officer. The court concluded that IAD sergeants are administratively exempt because they perform work ensuring that the department operates in accordance with its stated policy goals and objectives.

Plaintiffs do not challenge any of the district court's factual findings. Rather, they argue that because the IAD sergeants actually performed investigations, they cannot be exempt as administrators. Plaintiffs refer us to *Reich v. New York*, 3 F.3d 581 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994), in support of this argument. In *Reich*, the Second Circuit held that police officers were not exempt administrators if they were involved in "production" activities of the police department. *Id.* at 587. The *Reich* court held that conducting investigations was production work outside of the administrative exemption. *Id.* The police officers in *Reich* performed typical law enforcement activities: investigation of felonies and major misdemeanors. *Id.* at 585. The IAD sergeants, however, do not perform typical law enforcement activities; they perform internal investigations to ensure that the officers within the department are complying with its policies. Thus, *Reich* is inapposite because IAD sergeants are not involved in typical law enforcement activities.

In *Shockley*, the Fourth Circuit held that the "Ethics and Standards Lieutenant," who performed the same job duties as the IAD sergeants, was an exempt administrator. 997 F.2d at 28. The *Shockley* court relied on regulations that provide that an employee is an administrator if he "makes analyses of data and draws conclusions which are important to the determination of ... other policy, clearly he is doing work directly related to management policies or general business operations." *Id.* (quoting 29 C.F.R.

§ 541.205(c)(3)). Similar to the Ethics and Standards Lieutenant in *Shockley*, the IAD sergeants spend all of their time accumulating and analyzing data and making recommendations that shape the department's policy with respect to internal discipline. Under these circumstances, the district court correctly determined that the IAD sergeants were exempt administrators. *Shockley*, 997 F.2d at 28.

### 3. Quality Control Section Sergeant

 The quality control section is commanded by a captain, who has three sergeants assigned to the unit. Sergeants were selected to staff the unit because they are more experienced in coordinating and managing the activity of subordinates and they are able to determine whether officers are maintaining the standards of professionalism set forth in the department's policies and procedures. The court found that the primary duty of the quality control sergeants is to ensure that department personnel are functioning in a manner consistent with department policies. Thus, the district court concluded that they were exempt as administrators.

Plaintiffs inform us that the quality control sergeants inspect the bureaus to make sure they are adequately equipped, that their books comply with the department manual, and that they then write a factual report. Plaintiffs argue that the quality control sergeants do not exercise independent judgment and discretion adequate to fall under the administrative exemption. However, evidence at trial revealed that the sergeants were in the process of (1) reviewing the duties of the job performance unit to determine if that unit can be absorbed into the quality control unit, and (2) evaluating a complaint that the night shift staff of the Police Incident Reporting System is overworked. The sergeants who work on each study will make a recommendation on it. Appellees' App. at 231–32. This type of analysis necessarily entails the exercise of independent judgment and discretion. Accordingly, the district court correctly determined that the quality control sergeants are exempt administrators.

## D. Combination Exemption

The district court determined that the special assignments sergeant was exempt from the provisions of the FLSA under a combination of the executive and administrative exemptions. However, the district court made no factual findings with respect to the amount of time this sergeant spent on nonexempt duties. The regulations allow combining the exempt work from one section to the exempt work of another section. 29 C.F.R. § 541.600(a). Thus, an employee whose primary duty is neither management nor administration may fall under a combination exemption based upon his administrative and management responsibilities. *Shockley,* 997 F.2d at 29. "In combination exemptions, however, the employee must meet the stricter of the requirements on salary and nonexempt work." *Id.* (internal quotations and citation omitted). In other words, the employer must show that the employee falls within a combination of the long tests, and cannot rely on a combination of the short tests. This means that an employee will qualify for a combination exemption only if he does not devote more than 20% of his time to nonexempt work. 29 C.F.R. §§ 541.1(e), 541.2(d). Because the district court made no factual findings regarding the amount of time the special assignments sergeant spent on exempt and nonexempt job duties, it is impossible to determine whether or not the combination exemption applies.

We hold, however, based upon the factual findings the district court made, that the special assignments sergeant is an exempt executive under the FLSA. The special assignments unit assists in the management and coordination of officers assigned to various federal agencies, city of St. Louis agencies, and the mayor's office. The sergeant is in charge of fifteen officers. The court found that the sergeant's primary duty is managing his subordinates, with regard to expediting essentially administrative and liaison tasks. These findings are more than sufficient to conclude that the special assignments sergeant's primary duty is management. Thus, he too is exempt from the FLSA as an executive.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed with respect to the issues raised in the appeal and reversed with respect to the issue raised in the cross-appeal.