Michael T. McGUIRE, James P. Klum, Grant M. Coffey, Patrick A. Dooney, Jerry L. Ivie, et al., Plaintiffs–Appellees,

v.

CITY OF PORTLAND, OREGON, Defendant–Appellant.

No. 95–35391.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1996.

Decided Aug. 2, 1996.

Terence L. Thatcher, Office of City Attorney, Portland, Oregon, for defendant-appellant.

Kathryn T. Whalen, Bennett & Hartman, Portland, Oregon, for plaintiffs-appellees.

Charles C. Jackson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for amicus National Public Employer Labor Relations Association/Oregon Public Employer Labor Relations Association.

Before: GOODWIN, SKOPIL, and SCHROEDER, Circuit Judges.

Opinion by Judge GOODWIN; Concurrence by Judge SKOPIL.

GOODWIN, Circuit Judge:

Plaintiffs, current or former battalion chiefs for the Portland Fire Bureau, sued the

city for overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–209. The city defended on the theory that plaintiffs were not entitled to overtime pay because they were salaried workers and fell within the FLSA's overtime exemption for executive and administrative employees. 29 U.S.C. § 213(a)(1). The district court granted partial summary judgment for plaintiffs. We affirm.

## I. Statutory Scheme

FLSA overtime requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity...." 29 U.S.C. § 213(a)(1). The only issue in this appeal is whether one or more of the plaintiffs "is compensated for his services on a salary basis." 29 C.F.R. §§ 541.1(f) & 541.2(e).

An employee is paid on a salary basis if he or she receives a predetermined amount each paycheck, which is not subject to reduction due to variations in the quality or quantity of work performed, and the employee is paid a full week's salary for any week in which he or she performed any work. 29 C.F.R. § 541.118(a).[1]

The district court agreed with plaintiffs' contention that the city's published disciplinary policy produces the unintended result that the city loses its overtime exemption under the "salary test." The city's express policy provides that all city employees may suffer disciplinary suspensions with loss of pay for a variety of offenses and infractions. The policy manual does not limit these potential reductions in pay to weeks in which the employee does not work. In theory, an employee can work for three days, and be suspended without pay for two, contrary to the salary requirement of the regulation that an employee be paid full salary for any week in which she performed any work. No battalion chief has ever suffered such a reduction, but other city employees subject to the policy have been suspended without pay for disciplinary reasons.

On cross-motions for summary judgment, the district court concluded that the chiefs are not compensated on a "salary basis" within the meaning of the regulation because they are subject to the possibility of salary reductions for periods of less than one week. The court therefore granted summary judgment to the plaintiffs.

## II. Discussion

### A. The "Salary Basis" Test.

Exemptions under the FLSA are to be narrowly construed in order to further Congress' goal of providing broad federal protection to the rights of workers. *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959). An employer seeking to classify certain employees as exempt from the FLSA's overtime requirements bears the burden of proving that the employee falls plainly and unmistakably within the exemption. *Abshire v. County of Kern*, 908 F.2d 483, 485–86 (9th Cir. 1990) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960)), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991).

The city argued in the district court, and here, that plaintiffs are salaried employees despite the city's disciplinary policy because no battalion chief has ever received a deduction of pay for a week in which she worked, nor does the city intend ever to impose such a deduction on a battalion chief. As the Third Circuit has noted, "[t]here is a circuit split on the issue of whether docking must have actually occurred in order to place the employee outside the scope of the exemption." *Balgowan v. New Jersey, Dept. of Transportation*, 84 F.3d 656 (3rd Cir.1996).[2] *Balgowan* went on to observe that the Ninth Circuit had chosen its side in this split in *Abshire*. There we held that employees were not "salaried" where an express policy provided for "invalid" deductions, even

---

1. Employees do not lose their salaried status as a result of "[p]enalties imposed in good faith for infractions of safety rules of major significance." 29 C.F.R. § 541.118(a)(5). This exception to the regulation is not at issue here however.

2. The Supreme Court recently granted certiorari in *Auer v. Robbins,* 65 F.3d 702 (8th Cir.1995) in order to address this split.

though the county had never in fact imposed such deductions. We stated, "[t]he dispositive factor is that under the County's policy, the employee's pay is at all times '*subject to* ' deductions for tardiness or other occurrences. Either pay is fixed and immutable, or it is contingent. [Employees'] pay is contingent." *Abshire,* 908 F.2d at 487 (emphasis in original).

*Barner v. City of Novato,* 17 F.3d 1256 (9th Cir.1994), cited by the city, at first glance looks to be inconsistent with *Abshire.* But it carries only part of the load the city wants to place upon it. In *Barner* we held that the employees were not "subject to" deductions in pay within the meaning of the FLSA because no deductions in pay had ever occurred. *Id.* at 1262–63. However, we explicitly limited our holding to the facts in *Barner* where the policy providing for deductions in pay was unofficial, not an express policy as in *Abshire,* which we distinguished. *Id.* at 1261. Here we face an express, published policy and potential suspension without pay. *Abshire* provides the controlling precedent, not *Barner.* *See also Hurley v. Oregon,* 27 F.3d 392, 394–96 (9th Cir.1994) (state police officers who were subject to paramilitary discipline including demotion, and temporary suspension with "economic sanctions" for violations of departmental rules or policies under an express personnel policy were not salaried) and *Balgowan,* 84 F.3d 656 (adopting the rationale of *Abshire,* and concluding that employees did not meet the salary test under circumstances almost identical to those we face here).

Nor are we swayed by the city's promises never to impose "invalid" deductions on the battalion chiefs. In light of the express policy allowing the "invalid" deductions, the city would have to adopt an express policy barring application of the deductions to otherwise salaried employees. *See, e.g., Hackett v. Lane County,* 91 F.3d 1289 (9th Cir.1996) (filed this day).

**3.** This requirement was the one at issue in both *Abshire* and *Barner.* The validity of the regulation was not at issue in those cases, however, and our subsequent abrogation of the requirement does not affect our analysis in those opinions.

**B.** *Salary Test's Validity with Respect to Public Employees*

The city also argues that the salary test's requirement that executive and administrative employees not receive reductions in pay for less than a week, even for disciplinary reasons, prevents public employers from taking advantage of the executive and administrative employees exception, and is thus contrary to Congress' intent.

■ Where Congress' intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If the "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer [here, a regulation] is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

In *Service Employees Int'l Union v. County of San Diego,* 60 F.3d 1346, 1349 (9th Cir.1994) (*SEIU* ), we invalidated the salary test as formulated by the Department of Labor (DOL) prior to September 6, 1991. The old salary test barred an employer, public or private, from deducting a salaried employee's pay for absences of less than one day.[3] We recognized that this policy made it virtually impossible for public employers to exempt any employee as an administrator or executive because principles of public accountability required them to account for employees' time hour-for-hour. We determined this result to be contrary to Congress' intent, and held the salary basis test as it existed prior to September 6, 1991 invalid with respect to public employees.[4]

The city argues that the concerns for public accountability that we found persuasive in *SEIU* are also persuasive with respect to discipline-related absences. However, the requirement that salaried employees not suffer reductions in pay for violations of rules not amounting to major safety violations does

**4.** The Department of Labor had already recognized the problem and removed the offending portion of the salary test on September 6, 1991.

not inhibit public accountability. As the DOL observed, public employers have a broad array of disciplinary means available with which to satisfy public accountability without defeating the executive or administrative exemption. 57 Fed.Reg. 37666, 37674. Indeed, the city has provided no sound basis for its claim that public accountability requires it to have more liberal disciplinary powers than private employers. *Accord, Balgowan,* 84 F.3d 656.

Moreover, we previously stated that "[t]he 1992 regulation properly amends the salary test as applied to the public sector, so that the salary test now takes into account longstanding and reasonable state and local ordinances predicated on public accountability." *SEIU,* 60 F.3d at 1353. The city has advanced no compelling reason to hold differently now.

AFFIRMED.

SKOPIL, Senior Circuit Judge, concurring:

I concur in our holding that the city has failed to carry its burden of showing that these plaintiffs are compensated for their services on a salary basis. That result is clearly compelled by our prior decisions. Moreover, I agree that the policy considerations underlying the public accountability doctrine do not have sufficient force when applied to the disciplinary regulations to require us to override the agency's interpretation and invalidate the regulations. *See Balgowan v. New Jersey DOT,* 84 F.3d 656, 661 (3d Cir.1996) (upholding amended regulations); *Mueller v. Reich,* 54 F.3d 438, 443 (7th Cir.1995) (same).

I write separately, however, to express my concern with the development of the law of this circuit. Writing on a clean slate, I would accept the city's position emanating from the uncontroverted facts that the city intended these plaintiffs to be salaried employees, that no one in plaintiffs' classification has ever been disciplined, and that the city does not intend ever to impose discipline upon these individuals in a fashion that would jeopardize their salaried status and expose the city to overtime liability. Several other circuits have considered such arguments and have

agreed with the public employers' position that the mere theoretical possibility of disciplinary action is insufficient to cause a class of individuals to lose its salaried status. *See Auer v. Robbins,* 65 F.3d 702, 710 (8th Cir. 1995) ("The mere possibility of an improper deduction in pay does not defeat an employee's salaried status."), *cert. granted,* — U.S. ——, 116 S.Ct. 2545, 135 L.Ed.2d 1066 (1996); *Atlanta Professional Firefighters Union v. City of Atlanta,* 920 F.2d 800, 805 (11th Cir.1991). Our circuit law clearly conflicts with these decisions. *See Abshire v. County of Kern,* 908 F.2d 483, 487 (9th Cir. 1990).

This conflict between circuits is likely due to the fact that the Department of Labor regulations are not easily applied to public employees. The DOL enacted the regulation that formulated the salary test some twenty years before Congress amended the FLSA to apply to any public employees. It was not written with public employees in mind, and in my opinion, it appears to be ill-suited to apply to public employees. In fact, the federal government, notwithstanding the FLSA, has elected not to apply the salary standards, including the disciplinary provisions, to federal employees. *See* Office of Personnel Management Regulations, 5 C.F.R. §§ 551.101–551. That same decision should probably have been made as to *all* public employees. We seem to be clearly past that determination, however, which will take place now, if at all, only in the legislative arena.

Finally, I write also to explain why the city here cannot simply alter its policy and thereby fall within the rule articulated by our decision in *Hackett v. Lane County,* 91 F.3d 1289 (9th Cir. 1996). The city's disciplinary rules are the product of a collective bargaining process. When it became obvious to the city that it faced potential overtime liability upon the resurrection of the salary standard to public employees, the city attempted to alter its disciplinary procedures to comply with the federal provisions. That attempt was met with a legal challenge by these same plaintiffs, contending that any change in the rules violated the collective bargaining laws of Oregon. Thus, the city apparently cannot unilaterally amend its disciplinary rules, and

accordingly it will be forced to pay overtime to these plaintiffs and other similarly situated employees that have always before been considered salaried rather than hourly employees. In my opinion, this is a harsh but unavoidable outcome.