Clifford Daniel RAPER,
et al., Appellants,

v.

The STATE of Iowa and the Iowa
Department of Public Safety,
Appellees.

No. 03–0255.

Supreme Court of Iowa.

Oct. 6, 2004.

Pamela J. Walker and Mark D. Sherinian of Sherinian & Walker, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, Gordon E. Allen, Deputy Attorney General, and Kerry K. Anderson, Assistant Attorney General, for appellees.

WIGGINS, Justice.

Current and former peace officers brought an action against the State of

Iowa and the Iowa Department of Public Safety (Department) for overtime compensation under the Fair Labor Standards Act (FLSA). Because we agree with the district court's decision that: (1) the sergeants are exempt from the overtime provisions of the FLSA; (2) the State's policy of requiring the peace officers to take leave for absences of less than a day in connection with sick leave and personal leave does not violate the FLSA's salary-basis test; (3) the peace officers are not entitled to overtime pay from November 5, 1995, to the present on the basis the State permitted them to work overtime; (4) the peace officers are not entitled to interest on their damages from the date of filing their action in state court; (5) the peace officers' meal time is compensable; (6) the statute of limitations was tolled by the filing of a previous federal action, which was dismissed for lack of subject matter jurisdiction; and (7) the district court was correct in not utilizing the eighty-six hour/fourteen-day 29 U.S.C. § 207(k) (1988) work period allowed for law enforcement personnel, we affirm the district court as to those matters. We, however, conclude the State must compensate the peace officers for their drive time and reverse the district court as to that issue. Therefore, we affirm the district court's judgment in part, reverse it in part, and remand the case to the district court to determine the damages, if any, for the drive time of the peace officers consistent with this decision.

## I. Background and Procedure.

Plaintiffs are 147 current and former peace officers employed by the Department. Included in the list of plaintiffs are sergeants, who perform a variety of duties in the following job classifications: assistant district commander/road sergeant, vehicle theft sergeant, capitol security sergeant, governor's detail, planning and training officer, air wing administration officer, public information officer, computerization and technology sergeant, technical accident investigation coordinator, internal affairs officer, motor carrier safety assistance program coordinator, and safety education coordinator.

Plaintiffs originally filed their action in the United States District Court for the Southern District of Iowa on May 2, 1994, claiming they were entitled to overtime compensation under the FLSA. The State moved to dismiss the federal action for lack of subject matter jurisdiction. Pending a decision by the federal district court on the motion to dismiss, the peace officers filed the present action in state court as an FLSA action in April 1996. On June 21, 1996, the federal court dismissed the action concluding it did not have subject matter jurisdiction to hear the case. *Raper v. Iowa*, 940 F.Supp. 1421, 1427 (S.D.Iowa 1996). The peace officers later amended the present action to include claims under chapter 91A of the Iowa Code, Iowa's Wage Payment Collection Law, and for breach of contract. In June 1997, the Eighth Circuit Court of Appeals affirmed the dismissal of the federal case. *Raper v. Iowa*, 115 F.3d 623, 624 (8th Cir.1997).

The state district court dismissed the present case based on the "window of correction regulation, which allows an employer to preserve an employee's exempt status under the FLSA if it corrects past violations of the salary [basis] test, which the employer is required to meet." *Anthony v. State*, 632 N.W.2d 897, 899 (Iowa 2001)[1] (citing 29 C.F.R. § 541.118(a)(6)

---

1. *Anthony* was captioned under a different name because in *Anthony* only the subset of

plaintiffs who admitted they performed the

(1991)).[2] On appeal, this court initially affirmed the district court's decision, but it later granted a rehearing, reversed the district court, and held because the State had a policy of imposing deductions from pay for disciplinary reasons, the "window of corrections" doctrine did not apply. *Id.* at 904–05. The court remanded the case to the district court with directions to grant summary judgment in favor of the peace officers on the issue of liability and to proceed as necessary to determine damages. *Id.* at 905.

On remand, the district court determined the peace officers were not entitled to relief under chapter 91A or under a contract theory. The district court resolved the remaining issues regarding liability and damages under the FLSA. Applicable to this appeal, the district court concluded: (1) certain sergeants were exempt employees and were not eligible for overtime pay; (2) the State did not have to compensate any of the peace officers for the time they spent driving between home and work, with the exception of road sergeants who could be compensated for their drive time on a particular day when they were actually working road duty; (3) meal periods were compensable; (4) the State's policy requiring employees to take vacation, sick, or other forms of leave for absences of less than a day did not violate the FLSA's salary-basis test; (5) the peace officers were not entitled to overtime after the Commissioner of the Department (Commissioner) issued an order prohibiting overtime without obtaining prior permission; (6) the peace officers were not entitled to interest on their damages from the date of filing their action in state court; (7) the statute of limitations was tolled by the filing of the federal action; and (8) the

State is not allowed to utilize a 207(k) work period for the period prior to November 5, 1995.

The district court calculated overtime wages at one and one-half times the eligible peace officers' regular pay based on a forty-hour work period. The district court also awarded liquidated damages in an amount equal to overtime damages. In all, the district court awarded the eligible peace officers nearly $5.5 million in damages for the period beginning on May 2, 1991, with liability ending during the work week of November 5, 1995.

## II. Issues.

The peace officers raise the following issues on appeal: (1) whether the sergeants are exempt from the overtime provisions of the FLSA; (2) whether the peace officers who were not awarded compensation for their drive time by the district court are entitled to be compensated for their drive time; (3) whether the State's policy of requiring peace officers to take leave for absences of less than a day in connection with sick leave and personal leave violates the FLSA's salary-basis test; (4) whether the peace officers are entitled to overtime pay from November 5, 1995, to the present on the basis the State permitted them to work overtime; and (5) whether the peace officers are entitled to interest on their damages from the date of filing their action in state court.

The State raises the following issues on appeal: (1) whether the peace officers' meal period is compensable; (2) whether the statute of limitations was tolled by the filing of the federal action; and (3) whether the district court erred in failing to utilize the eighty-six hour/fourteen-day

---

duties of an executive employee appealed the district court's decision.

**2.** All references to the Code of Federal Regulations are to the 1991 Code, unless otherwise noted.

207(k) work period allowed for law enforcement personnel. We will set out the facts as they relate to the issues.

### III. Scope of Review.

■■ Our review is for errors at law. Iowa R.App. P. 6.4. The trial court's factual findings are binding on appeal if supported by substantial evidence. Iowa R.App. P. 6.14(6)(*a*). When a party challenges a district court's ruling for lack of substantial evidence, we view the evidence in the light most favorable to the judgment. *Frank Millard & Co. v. Housewright Lumber Co.*, 588 N.W.2d 440, 441 (Iowa 1999). When a reasonable mind would accept the evidence as adequate to reach a conclusion, the evidence is substantial. *Fiala v. Rains*, 519 N.W.2d 386, 387 (Iowa 1994). Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding. *Sahu v. Bd. of Med. Exam'rs*, 537 N.W.2d 674, 676–77 (Iowa 1995). However, neither the district court's conclusions of law nor its application of its legal conclusions is binding on appeal. *Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 617 (Iowa 1999). The burden of proving exempt status is on the employer. *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 999 (8th Cir.2003).

### IV. Are the Sergeants Exempt From the Overtime Provisions of the FLSA?

The FLSA directs which employees are entitled to overtime compensation. 29 U.S.C. § 207(a)(1). The overtime provisions of the FLSA do not apply to an employee employed in "bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). Congress delegated the responsibility to define these terms to the Secretary of Labor. *Id.* Under the rules promulgated by the Secretary, three tests must be satisfied for an executive, administrative, or professional employee to be exempt: a "duties" test (29 C.F.R. § 541.1–.2); a "salary-level" test (29 C.F.R. § 541.1(f), 541.2(e)(1)); and a "salary-basis" test (29 C.F.R. § 541.118). Certain sergeants claim there is ongoing liability for overtime under the FLSA because they do not perform executive or administrative duties pursuant to the "duties" test. The resolution of whether the sergeants are exempt from the overtime provisions requires us to examine the "duties" test.

The regulations contain a "short test" and "long test" to determine whether an employee is employed in an executive or administrative capacity under the duties test. *See* 29 C.F.R. § 541.1–.2. The short test applies if an employer compensates an employee on a salary basis at a rate not less than $250 per week. *Id.* § 541.1(f), 541.2(e)(1). Because the sergeants receive over $250 per week compensation on a salary basis, the short test applies.

#### A. Executive Exemption.

The district court concluded the sergeants serving as assistant district commanders/road sergeants, vehicle theft sergeants, and sergeants assigned to capitol security are exempt from the overtime provisions of the FLSA due to the act's executive exemption. To be exempt under the short test, the employer must show the employee's "primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.1(f). Other regulations further define the exemption.

For instance, 29 C.F.R. § 541.104 defines "a customarily recognized department or subdivision." It provides:

The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of men assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. In order properly to classify an individual as an executive he must be more than merely a supervisor of two or more employees; nor is it sufficient that he merely participates in the management of the unit. He must be in charge of and have as his primary duty the management of a recognized unit which has a continuing function.

*Id.* § 541.104(a).

29 C.F.R. § 1.102 further defines the term "management." According to the regulation, the following types of work are consistent with managerial responsibilities:

Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

*Id.* § 541.102(b).

29 C.F.R. § 541.103 defines "primary duty." The regulation begins by stating,

"[A] determination of whether an employee has management as his primary duty must be based on all the facts in a particular case." *Id.* § 541.103. In an ordinary case, a good rule of thumb is that "primary duty" means a major part or over fifty percent of the employee's time is spent in management. *Id.* Although time is a relevant factor, an employee's primary duty can be management, even if the employee spends less than fifty percent of his or her time in management. *Auer v. Robbins,* 65 F.3d 702, 713 (8th Cir.1995). The factors we need to consider in deciding whether a sergeant's primary duty is management if the sergeant spends less than fifty percent of the sergeant's time performing managerial duties are:

1. The relative importance of the managerial duties as compared with other types of duties;

2. The frequency with which the employee exercises discretionary powers;

3. The employee's relative freedom from supervision;

4. The relationship between the employee's salary and the wage paid to other employees for the kind of nonexempt work performed by the supervisor.

*Id.* at 712; 29 C.F.R. § 541.103.

Lastly, 29 C.F.R § 541.115 explains the concept of the working foreman. It provides:

(a) The primary purpose of the exclusionary language placing a limitation on the amount of nonexempt work is to distinguish between the bona fide executive and the "working" foreman or "working" supervisor who regularly performs "production" work or other work which is unrelated or only remotely related to his supervisory activities. (The

term "working" foreman is used in this subpart in the sense indicated in the text and should not be construed to mean only one who performs work similar to that performed by his subordinates.)

(b) One type of working foreman or working supervisor most commonly found in industry works alongside his subordinates. Such employees, sometimes known as strawbosses, or gang or group leaders perform the same kind of work as that performed by their subordinates, and also carry on supervisory functions. Clearly, the work of the same nature as that performed by the employees' subordinates must be counted as nonexempt work and if the amount of such work performed is substantial the exemption does not apply. ("Substantial," as used in this section, means more than twenty percent. See discussion of the twenty-percent limitation on nonexempt work in § 541.112.)

*Id.* § 541.115.

With these legal principles in mind, we now turn to the specific issues raised by the sergeants to determine if substantial evidence supports the district court's findings regarding the executive exemption.

**1. Does substantial evidence support the district court's findings that the sergeants serving as assistant district commanders/road sergeants are exempt due to the FLSA's executive exemption?**

■ The State employs the majority of the sergeants in these job positions. The district court found these sergeants are exempt, because management constitutes the position's primary duty, and the position entails supervising at least two employees. Although the district court acknowledged some of the duties these sergeants perform overlap with the troopers' duties, there are additional duties completely separate and distinct from those of the troopers. These administrative duties include tasks such as setting work schedules, performing building maintenance duties, and clerical duties. The sergeants also review the troopers' reports, take charge of crime scenes, give considerable input in the promotions of the troopers, train subordinates, and make arrangements pertaining to special assignments.

The district court found these sergeants also perform executive-type functions such as being immediate supervisors to the troopers in the chain of command. Troopers look to these sergeants for guidance and direction. Sergeants employed in this position also ensure their area of assignment is patrolled and secured. They schedule work assignments, set duty schedules, oversee incoming calls, and are accountable for all assets and facilities. They forward police reports and evidence to the proper jurisdictions. Pursuant to the Department rules associated with discipline, these sergeants have several disciplinary duties. Significantly, these sergeants are responsible for the entire district when the district commander is not on duty. Additionally, the assistant district commander acts as the district supervisor at times when the lieutenant district commander is unavailable. In conclusion, the district court found in its consideration of the totality of the circumstances, these sergeants' duties are akin to management and supervisory positions and they, therefore, are exempt from the overtime provisions of the FLSA due to their executive status.

These sergeants argue the trial court made no finding with respect to how much time they spend on management or supervisory duties. They further argue, if an employee performs twenty percent of his or her time in non-exempt work, it is con-

sidered substantial. *See* 29 C.F.R. § 541.1(e). They also assert fifty to seventy percent of these sergeants' time is spent doing routine patrol and only twenty-five to thirty percent is spent doing duties that could be considered managerial. Finally, they argue that many of the duties the district court characterized as managerial duties are actually clerical duties such as answering the phone and greeting walk ins.

Although these sergeants emphasize the percentage of time they spend performing regular trooper duties as compared to the time they spend performing supervisory functions, this is not the determinative factor in the court's analysis. *See Auer*, 65 F.3d at 712. Our determination must be based on all the facts in a particular case and the application of the four-prong test articulated in *Auer* to decide whether management is the employees' primary duty when these sergeants spend less than fifty percent of their time on managerial duties. *Id.*

Substantial evidence supports the district court's findings that the sergeants employed as assistant district commanders/road sergeants are exempt executives. The patrol's performance plan lists these sergeants' responsibilities to include supervising, assigning duties, controlling, organizing, and planning field deployment, and maintaining proficiency in work-related discipline to assure accountability in conformance with the patrol regulations. These sergeants spend their patrol time doing management duties such as meeting with troopers, riding with troopers, and notably, training troopers to do a better job in their law enforcement functions. A summary of activity reports for the patrol shows these sergeants spend only 26.71% of their time patrolling, compared with troopers, who spend 67.86% of their time on routine patrols. These sergeants aver-

age 1.4 citizen contacts per duty day, while troopers average 6.55 citizen contacts per day. These sergeants are the ranking officer at any accident or arrest scene. These sergeants' rate of pay is more than the troopers' rate of pay. This differential in pay shows the Department is paying for more than the value of basic patrol services. Based on the foregoing, we affirm the district court's decision as to these sergeants.

**2. Does substantial evidence support the district court's findings that the vehicle theft sergeants are exempt due to the FLSA's executive exemption?**

The district court found the duties of the vehicle theft sergeants include assisting the lieutenant in administrative, investigative, and technical operations. The district court also found the position supervises the troopers by overseeing field investigations, evaluating performance, interviewing, evaluating needs, and coordinating activities. Finally, the district court found, except for performing undercover investigations, the duties of vehicle theft sergeants are exclusively managerial. These sergeants argue the trial court failed to make any finding with respect to the amount of time spent on these duties or that these duties are primary.

■ Our review of the record indicates there is substantial evidence to support the district court's finding that these sergeants' primary duty is management under the four factors set forth in *Auer*, 65 F.3d at 712. State patrol regulations provide this sergeant is "the immediate supervisor of the vehicle theft troopers." In order to supervise the troopers properly, these sergeants by necessity must oversee field investigations, evaluate performance, evaluate needs, and coordinate activities.

The duties primarily consist of managerial duties.

These sergeants also argue they are working foremen. As to these sergeants' working-foremen argument, some courts have held the working-foremen regulation is not applicable when the short test is used, as in this case. *See, e.g., Hays v. City of Pauls Valley,* 74 F.3d 1002, 1007–08 (10th Cir.1996) (holding an employee qualifying under the short test is not entitled to a working-foremen instruction because that provision is inapplicable to the short test). We need not make that determination because substantial evidence supports the conclusion the managerial duties performed by these sergeants require they have more discretion and responsibility over their subordinates than those of working foremen under 29 C.F.R § 541.115. Therefore, we affirm the district court's decision as to these sergeants.

**3. Does substantial evidence support the district court's findings that the sergeants assigned to capitol security are exempt due to the FLSA's executive exemption?**

■ There are two sergeants working in this assignment. The district court found these two sergeants perform the same supervisory duties as assistant district supervisors. Therefore, the trial court found these sergeants to be exempt from the overtime provisions of the FLSA due to its executive exemption. These sergeants argue they only spend twenty percent of their time doing supervisory duties. The time spent is not the determinative factor. *See Auer,* 65 F.3d at 712. The record supports the finding these sergeants perform the same managerial duties as assistant district supervisors. Substantial evidence supports the district court's finding that these sergeants are exempt executives under the factors set forth in *Auer. Id.*

These sergeants also argue they are working foremen. Substantial evidence supports the conclusion these sergeants have more discretion and responsibility over their subordinates than those of working foremen under 29 C.F.R. § 541.115. Therefore, we affirm the district court's decision as to these sergeants.

**B. Administrative Exemption.**

The district court concluded the sergeants assigned to the governor's detail, sergeants serving as planning and training officers, sergeants serving as air wing administration officers, sergeants serving as public information officers, computerization and technology sergeants, sergeants serving as technical accident investigation coordinators, and the internal affairs officer are exempt from the overtime provisions of the FLSA due to the act's administrative exemption.

To be exempt under the short test, the employer must show the employee's "primary duty consists of the performance of [office or non-manual work directly related to management policies or general business operations of his employer], which includes work requiring the exercise of discretion and independent judgment." *Auer,* 65 F.3d at 719–20 (citing 29 C.F.R. § 541.2(e)(2)); *accord Shockley v. City of Newport News,* 997 F.2d 18, 28 (4th Cir.1993). Administrative duties include "advising the management, planning, negotiation, representing the company, purchasing, promoting sales, and business research and control." *Auer,* 65 F.3d at 720 (citing 29 C.F.R. § 541.205(b)). An "employee's primary duty is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time." *Spinden v. GS Roofing Prods. Co.,* 94 F.3d 421, 427 (8th Cir.1996) (quoting *Reich v.*

*Wyoming,* 993 F.2d 739, 742 (10th Cir. 1993)).

The regulations define the phrase " 'the exercise of discretion and independent judgment' to mean that the person 'has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.' " *See Robinson–Smith v. Gov't Employees Ins. Co.,* 323 F.Supp.2d 12, 20 (D.D.C.2004) (quoting 29 C.F.R. § 541.207(a)). The exercise of discretion and independent judgment " 'involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered.' " *Id.* (quoting 29 C.F.R. § 541.207(a)). The regulations caution that an employee is not exercising discretion and independent judgment when that employee merely applies his knowledge in following prescribed procedures or determining which procedure to follow even if there is some leeway in reaching a conclusion. *Id.* (citing 29 C.F.R. § 541.207(c)(1)).

The district court examined each classification of sergeants to determine if the State proved certain sergeants were administratively exempt. We now examine each category to determine if substantial evidence supports the district court's findings.

### 1. Does substantial evidence support the district court's findings that the sergeants assigned to the governor's detail are exempt due to the FLSA's administrative exemption?

■ There are four sergeants assigned to the governor's detail. The district court found the primary duty of these sergeants is maintaining security for the governor, lieutenant governor, and the first lady. These sergeants make travel arrangements, plan security for trips and at events, coordinate with other agencies to ensure security for the governor, and provide transportation. The district court found the sergeants use their sole discretion and independent judgment on how to implement security for a trip and concluded these sergeants are exempt from the overtime provisions due to the administrative exemption. These sergeants argue they are merely using their technical knowledge in providing security and are not exempt.

Our review of the record reveals these sergeants provide protection, which requires them to assess the location and the security risks, determine the most effective plan for protection, and coordinate security with local law enforcement personnel. These duties include more than applying their knowledge in following prescribed procedures. These duties require these sergeants to exercise a great deal of discretion and independent judgment to complete their tasks successfully. At any given moment, these sergeants may be required to make a decision to protect the life or safety of the governor, lieutenant governor, and the first lady. The decisions made by these sergeants in providing security are their primary duty requiring the exercise of discretion and independent judgment.

### 2. Does substantial evidence support the district court's findings that the sergeant serving as the planning and training officer is exempt due to the FLSA's administrative exemption?

■ The district court concluded the sergeant in this job position is required to (1) review, research and organize state patrol policies; (2) coordinate continuing training for all state patrol officers; (3) set the training agendas; and (4) research new technologies and policies the state

patrol may use to improve law enforcement activities. The record confirms the sergeant in this position is required to exercise discretion and independent judgment to perform his or her duties. This sergeant must review a myriad of resources and choose the applicable policies, training, and technologies the state patrol needs to improve law enforcement activities. This sergeant is not merely applying his or her knowledge in following prescribed procedures or determining which procedure to follow. Substantial evidence supports this sergeant is exempt as an administrator.

3. **Does substantial evidence support the district court's findings that the sergeants serving as air wing administration officers are exempt due to the FLSA's administrative exemption?**

The state patrol air wing owns nine aircraft that it uses for law enforcement purposes. The district court found and substantial evidence supports these sergeants supervise anything that has to do with pilots or aircrafts. The specific duties they perform are (1) ensuring the pilots maintain proper licensing, training, and compliance with other FAA requirements; (2) determining a pilot's fitness for flying; (3) inspecting aircrafts to determine their flight worthiness; (4) approving expenses needed to maintain the aircraft; and (5) exercising administrative and operational supervision over the trooper pilots and other personnel assigned to aircraft operations. These duties require these sergeants to advise management, plan, purchase, and conduct research. In exercising these duties, by necessity, these sergeants must use their discretion and independent judgment. The district court was correct in determining these sergeants are administratively exempt.

4. **Does substantial evidence support the district court's findings that the sergeants serving as public information officers are exempt due to the FLSA's administrative exemption?**

The district court found these sergeants' duties include maintaining media relations for the state patrol's divisions, coordinating activities necessary in order to provide the media with accurate information, scheduling training, providing guidance to other personnel on how to respond to the media, and maintaining the state patrol's website. These sergeants do not challenge these factual findings, but argue they are not exempt because they are not using discretion and independent judgment in performing these tasks. The record supports that to perform this job, these sergeants must be able to think on their feet and exercise independent judgment in responding to the media on matters of interest to the state patrol. Substantial evidence supports the conclusion these sergeants compare, consider, and evaluate different courses of conduct before acting or making a decision in performing these tasks. This evidence qualifies these sergeants as being administratively exempt.

5. **Does substantial evidence support the district court's findings that the computerization and technology sergeant is exempt due to the FLSA's administrative exemption?**

The district court found this sergeant installs computers and acts as a troubleshooter throughout the state for the patrol's computer system. This sergeant is responsible for maintaining the overall efficiency of the patrol's computer system. This sergeant is neither a programmer nor a system analyst. The sergeant does not dispute this finding, but argues only pro-

grammers and system analysts are exempt under the FLSA. *See* 29 U.S.C. § 213(a)(17); 29 C.F.R. § 541.303 (1993). Although an employee may be exempt as a programmer or system analyst under § 213(a)(17), such a finding does not preclude an employee who works with a company's computer system from being exempt under § 213(a)(1)'s administrative exemption. Section 213(a) separates each listed exemption by the word "or." *See* 29 U.S.C. § 213(a). Thus, the exemptions are not mutually exclusive.

The record confirms the performance plan applicable to this sergeant requires the sergeant to (1) install, configure, and test software programs; (2) setup, configure, and maintain all division computer systems as needed; (3) monitor systems; (4) initiate any corrective measures needed to keep the facilities running efficiently; and (5) maintain software and application packages. These duties constitute non-manual work directly related to the general business operations of the patrol. *See* 29 C.F.R. § 541.206 (providing that the employee must have as his primary duty non-manual work directly related to management policies or general business operations of his employer to be considered exempt under the administrative exemption). In performing these tasks, the sergeant does not merely follow manuals, but exercises discretion and independent judgment to complete each task. Substantial evidence supports the district court's findings as to this sergeant.

**6. Does substantial evidence support the district court's findings that the sergeants serving as technical accident investigation coordinators are exempt due to the FLSA's administrative exemption?**

 The district court found the sergeants serving as technical accident investigation coordinators are administratively exempt. In doing so, the district court found a technical accident investigator coordinator (1) regularly researches and trains to stay current with new developments in the field; (2) maintains and monitors accident reports and records; (3) conducts meetings relating to technical investigations; (4) trains troopers; (5) conducts reviews of all investigations; (6) coordinates the activity of the field coordinators; and (7) ensures investigation techniques are correct and uniform in application. Our review of the record verifies substantial evidence in the record supports the district court's determination, because these findings are consistent with the responsibilities and standards under the state patrol's performance plan applicable to sergeants serving as technical accident investigation coordinators.

This position requires the sergeant to apply specialized knowledge, discretion, and independent judgment to a technical accident investigation. A sergeant in this position is responsible for management, planning, and representing the patrol's general business operation regarding technical accident investigations. The record is more than sufficient to establish these sergeants are administratively exempt.

**7. Does substantial evidence support the district court's findings that the sergeant serving as the internal affairs officer is exempt due to the FLSA's administrative exemption?**

 The internal affairs bureau is a two-officer unit, comprised of a lieutenant and a sergeant. The bureau's purpose is to conduct investigations of alleged violations of Department rules to ensure officers receive fair hearings and to see complaints are resolved properly and quickly. This sergeant has sole control and di-

rection of all bureau investigations. The district court ruled this position was exempt based on the administrative exemption. The sergeant in this position argues this position serves only an investigative function and does not require the use of discretion or independent judgment. The sergeant simply gathers facts but does not make recommendations.

We disagree with the sergeant's arguments because the record reveals this sergeant has sole control and direction of all bureau investigations assigned to the sergeant. This sergeant includes in his or her final reports to the Commissioner whether the person under investigation complied with Department policies and recommends appropriate discipline based on similar discipline given other persons for the same or similar violations. Although this sergeant performs the actual investigation, this sergeant also analyzes the data collected in the investigation and makes recommendations that ensure the patrol "operates in accordance with its stated goals and objectives." *Auer,* 65 F.3d at 721. For these reasons, substantial evidence supports the district court's conclusion that this position is administratively exempt.

### C. Combination Exemption.

The district court found the sergeants serving as motor carrier safety assistance program (MCSAP) coordinators and safety education sergeants exempt under the executive and administrative exemptions. The regulations allow a combination exemption based on administrative and management responsibilities when an employee's primary duty is neither management nor administration. *Auer,* 65 F.3d at 722 (citing 29 C.F.R. § 541.600(d)). To prove the combination exemption, the employer cannot rely on a combination of the short tests, but must show the employee quali-

fies on a combination of the long tests. *Shockley,* 997 F.2d at 29. The district court did not make any findings necessary for the application of a combination exemption under the long tests. If, however, the findings support the application of either the executive or the administrative exemption under the short tests, we can determine whether these positions are exempt without remanding the case to the district court for further consideration. *Auer,* 65 F.3d at 722.

### 1. Does substantial evidence support the district court's findings that the sergeant serving as the MCSAP coordinator is exempt due to the FLSA's executive or administrative exemption?

A lieutenant or sergeant fills the MCSAP position. The district court found the lieutenant's position was exempt due to its executive and administrative status. Therefore, the district court concluded the sergeant's position was likewise exempt. The district court, however, only found the lieutenant position to be administratively exempt. Because the district court only made findings of fact as to the administrative exemption, we will only review this position as to that exemption.

■ Our examination of the record confirms the sergeant in this position coordinates a federally funded program of the federal highway administration known as the MCSAP. The program's purpose is to concentrate enforcement efforts on drivers of large commercial vehicles. Although the MCSAP sergeant has patrol duties, substantial evidence supports the district court's findings that the primary duties of an MCSAP sergeant is to write training manuals, schedule training sessions, review trooper reports, put together operational plans, develop reporting mechanisms with the federal agency, plan special

enforcement projects, and make sure the patrol complies with the requirements of the program. These duties are non-manual administrative duties that require the exercise of discretion and independent judgment. Thus, this sergeant's position qualifies for the administrative exemption.

**2. Does substantial evidence exist to support the district court's findings that sergeants serving as safety education officers are exempt due to the FLSA's executive or administrative exemption?**

The district court found the primary focus of the safety education program is to provide information to the public through presentations for the purpose of creating greater awareness for safety. As part of this program, the safety education officers speak to schools and other groups concerning issues relating to public safety. This position oversees the safety education efforts of other officers and provides input for evaluations of other safety education officers' performance. We believe substantial evidence supports these findings.

To perform these tasks, the sergeant must use discretion and independent judgment. Making recommendations, evaluating other officers, planning presentations, and training are all non-manual tasks directly related to management policies or general business operations of the patrol. Substantial evidence supports the district court's finding these sergeants are exempt administrators.

**V. Are the Peace Officers Who Were not Awarded Compensation for Their Drive Time by the District Court Entitled to be Compensated for Their Drive Time?**

As a general proposition, "an employee's time is 'work' for the purposes of the FLSA if it is spent 'predominantly for the benefit of the employer.'" *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir.2001). Under the Portal–to–Portal Act, which amended the FLSA in 1947, "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" and "activities which are preliminary to or postliminary to said principal activity or activities" shall not subject the employer to liability under the FLSA. 29 U.S.C. § 254(a). The federal regulation provides normal home to work travel is not compensable. 29 C.F.R. § 553.221(e). The regulation further provides:

> A police officer, who has completed his or her tour of duty and who is given a patrol car to drive home and use on personal business, is not working during the travel time even where the radio must be left on so that the officer can respond to emergency calls. Of course, the time spent in responding to such calls is compensable.

*Id.* § 553.221(f).

There are two exceptions to the general rule that drive time is non-compensable. The first exception is when there is a custom or practice between the employer and employee to compensate the employee for his or her drive time. 29 U.S.C. § 254(b)(2). The second exception is when the activities are an integral and indispensable part of the employment. *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267, 273 (1956).

The district court found "there was insufficient cumulative evidence showing the existence of a written or unwritten agreement or a custom or practice to treat travel time as compensable work time" as to the excluded peace officers. Both parties agree the definitions of the words "custom" and "practice" as defined in *Ar-*

*cadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2d Cir.1994), in connection with 29 U.S.C. § 203, apply to "custom" and "practice" as used in 29 U.S.C. § 254(b). Therefore, for purposes of this appeal, we define "custom" as suggesting an ongoing understanding with some continuity, while "practice," unlike "custom," includes understandings with regard to the future agreed to by the parties. *Id.*

In our review of the record, we find there is no substantial evidence to support the district court's finding the State did not have a custom to compensate the peace officers for their drive time prior to November 5, 1995. The state patrol regulations provide troopers are on duty at any time they are in uniform or in a state vehicle. At trial, the Commissioner was unsure whether it was the practice or custom of the Department to include drive time in the hours of work for these peace officers. The peace officers testified without dispute they were never docked pay if they had not put in forty hours a week, excluding drive time. The peace officers considered drive time compensable. The record supports that prior to November 5, when the Commissioner issued an order stating the Department would not compensate supervisory peace officers for their drive time, no one in the Department told the peace officers their drive time was not compensable. For the period prior to November 5, not one witness testified that the peace officers' drive time was not compensable, including the Commissioner himself. In summary, we have been unable to locate substantial evidence in the record to support the district court's finding "there was insufficient cumulative evidence showing the existence of a written or unwritten agreement or a custom or practice to treat travel time as compensable work time" as to the excluded peace officers.

Therefore, for the period prior to November 5, 1995, the State must compensate the excluded peace officers for their drive time. Because we find these peace officers are entitled to overtime for their drive time for the reason they established a custom by the State to compensate them for their drive time, we need not consider the second exception, when the activities of drive time are an integral and indispensable part of the employment.

**VI. Does the State's Policy of Requiring Peace Officers to Take Leave for Absences of Less Than a Day in Connection With Sick Leave and Personal Leave Violate the FLSA's Salary–Basis Test?**

In the prior appeal of this action, we addressed the salary-basis test in connection with the State's policy of reductions in pay for disciplinary suspensions. An employee is exempt from the overtime provisions of the FLSA if the salary-basis test, along with the two other tests, is satisfied. *Anthony,* 632 N.W.2d at 902–03. If an employee " 'regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed,' " the employee is considered to be paid on a salary basis. *Id.* at 903 (quoting 29 C.F.R. § 541.118(a)). For an employee to qualify for exempt status, "the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." *Id.* (quoting 29 C.F.R. § 541.118(a)). Reductions in pay for disciplinary suspensions are impermissible reductions destroying an employee's exempt status. *Auer v. Robbins,* 519 U.S. 452, 456, 117 S.Ct. 905, 909, 137 L.Ed.2d 79, 87 (1997). In *Anthony,* we held the

State did provide for disciplinary suspensions without pay; thus, the peace officers were not exempt from the overtime provisions of the FLSA.[3] 632 N.W.2d at 904–05. On remand, the district court found the State rescinded its policy of disciplinary pay deductions on August 7, 1998. The district court concluded the State was not liable "for overtime wages … after August 7, 1998 based solely on [the State's] continuing policy of making partial day pay deductions [for disciplinary suspensions]." Neither party appealed this ruling.

Presently, the State reduces a peace officer's pay for partial day absences if vacation or sick leave is not available. The peace officers contend the State remains noncompliant after August 7, 1998, with the salary-basis test, because it continues to make deductions in the peace officers' pay for these partial-day absences. The peace officers claim the parties litigated this issue on appeal in *Anthony;* thus, *Anthony* is the law of the case. *See United Fire & Cas. Co. v. Iowa Dist. Ct.,* 612 N.W.2d 101, 103 (Iowa 2000). The peace officers are correct that an appellate decision is final as to all questions decided on appeal, and the district court normally is duty-bound to follow that decision. *Id.* In *Anthony,* however, we did not address the salary-basis test in connection with partial day absences if vacation or sick leave is

not available; therefore, *Anthony* is not the law of the case on this issue.

On addressing the merits of whether the State remains noncompliant with the salary-basis test because it continues to make deductions in the peace officers' pay for these partial-day absences, the district court concluded the State was compliant with the salary-basis test under the regulation promulgated by the Secretary. 29 C.F.R. § 541.5d provides in relevant part:

(a) An employee of a public agency who otherwise meets the requirements of § 541.118 shall not be disqualified from exemption under §§ 541.1, 541.2, or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because:

(1) permission for its use has not been sought or has been sought and denied;

<hr/>

**3.** In *Anthony* the State claimed the "window of correction" clause applied to the peace officers. The window of correction clause states:

The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by

these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future. 632 N.W.2d at 903 (citing 29 C.F.R. § 541.118(a)(6)). We disagreed with the State by holding the "window of correction clause is only available to those employers who do not have an established policy of deducting their employees' pay for disciplinary reasons yet, in a few selected instances, have imposed such discipline." *Id.* at 904.

(2) accrued leave has been exhausted; or

(3) the employee chooses to use leave without pay.

29 C.F.R. § 541.5d(a) (1993).

The State's practice regarding partial-day absences is based on statutes and regulations adopted pursuant to theories of public accountability. The peace officers accrued sick leave pursuant to a duly enacted statute. Iowa Code § 79.1 (1991). The Iowa Code required the director of the department of personnel to establish rules pertaining to attendance and leaves of absences, with or without pay, or reduced pay. *Id.* § 19A.9(18). The department of personnel adopted regulations requiring employees to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day. Iowa Admin. Code rs. 581–14(1)–(10) (1991).

We believe the rules adopted by the department of personnel conform to the principles of public accountability under the Secretary's regulation found at 29 C.F.R. § 541.5d(a). Compliance with this regulation permits public employers to maintain leave policies to promote public accountability without affecting the salary-basis test. Thus, the district court was correct when it concluded the requirement that these peace officers take leave for absences of less than a day in connection with sick leave and personal leave does not violate the FLSA's salary-basis test.

### VII. Are the Peace Officers Entitled to Overtime Pay From November 5, 1995, to the Present on the Basis the State Permitted Them to Work Overtime?

The November 5, 1995, order entitled "Overtime Accrual by Supervisory Peace Officer – Interim Policy" and the November 15, 1995, order, which replaced the November 5 order, stated no supervisory officer shall be paid for overtime hours unless the officer obtained prior approval from the Commissioner. The district court denied overtime wages to the peace officers after the November orders, concluding the Commissioner did not have actual or constructive knowledge of any overtime worked after he entered the orders. The district court relied heavily on the fact no peace officer demanded the State pay overtime after the issuance of the November orders. The peace officers' demand for overtime came only after they filed this lawsuit.

Under the FLSA, an employer has the authority to limit the number of hours an employee can work. *See Christensen v. Harris County*, 529 U.S. 576, 585, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621, 630 (2000). If an employer promulgates a rule limiting the number of hours an employee can work, the employer cannot knowingly accept the benefits of the extra hours worked without including the extra hours in the employee's total hours for the purpose of computing overtime compensation. *Mumbower v. H.R. Callicott*, 526 F.2d 1183, 1188 (8th Cir.1975). Additionally, if the employer "knows or has reason to believe" an employee is continuing to work overtime and the duties being performed are an integral and indispensable part of the employee's principal work activity, the employee must be compensated for those overtime hours. *Id.* Finally, if an employee does not notify an employer or purposely prevents an employer from acquiring knowledge of the employee's overtime work, the employer's failure to pay overtime is not a violation of the FLSA. *Forrester v. Roths's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414–15 (9th Cir.1981). Thus, if an employer has actual or constructive knowledge the employee was working overtime, the employer must compensate

the employee for overtime under the FLSA. *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986).

■ Our review of the record confirms substantial evidence supports the district court's finding. After the entry of the November orders, not one peace officer who is a plaintiff in this action, ever requested the Commissioner approve any overtime. After November 5, 1995, the evidence supports the Commissioner did not have knowledge that any of the peace officers were working overtime. Although the Commissioner may have had access to records indicating certain persons were working overtime, access to the records does not constitute constructive knowledge that persons were working overtime. *Newton v. City of Henderson,* 47 F.3d 746, 749 (5th Cir.1995).

### VIII. Are the Peace Officers Entitled to Interest on Their Damages From the Date of Filing Their Action in State Court?

On December 5, 2002, the district court entered part one of its order awarding damages to the peace officers under the FLSA. In the same order, the district court did not allow any damages under Iowa Code chapter 91A. On December 13, 2002, the peace officers filed a motion to amend or enlarge ruling, requesting the court to award statutory interest at the rate of ten percent from the date of filing under chapter 91A. In its motion to amend or enlarge ruling, the peace officers did not ask the court to enter judgment on their chapter 91A claim. On January 13, 2003, the district court overruled the peace officers' motion to amend or enlarge rul-

ing, concluding it could not award prejudgment interest under chapter 91A because it did not award any damages under chapter 91A.[4] On January 28, 2003, the district court entered judgment for the peace officers with interest to run from the date of the entry of its judgment.

At common law, judgments did not bear interest. *Arnold v. Arnold,* 258 Iowa 850, 854, 140 N.W.2d 874, 877 (1966). Interest on judgments is statutory. The statute applicable to the award of interest provides in relevant part:

Interest shall be allowed on all money due on judgments and decrees of the courts at the rate of ten percent per year. . . . [T]he interest shall accrue from the date of the commencement of the action. . . .

Iowa Code § 535.3 (1997).

The peace officers argue the district court should have awarded prejudgment interest under chapter 91A in accordance with Iowa Code section 535.3. The fallacy of this argument is the district court did not award the peace officers any damages under chapter 91A. Therefore, we cannot award prejudgment interest under section 535.3 to an award of damages the district court did not make. The peace officers did not contest the district court's failure to award damages under chapter 91A in the district court. Failure to present this issue in the district court proceeding precludes the peace officers from raising the issue on appeal. *Metz v. Amoco Oil Co.,* 581 N.W.2d 597, 600 (Iowa 1998).

### IX. Is the Peace Officers' Meal Period Compensable?

■ The district court concluded the peace officers' meal period was undertaken

---

4. By this statement, we are not expressing any opinion whether prejudgment interest would be allowed under chapter 91A. The peace officers concede they are not entitled to prejudgment interest on an award of wages

and liquidated damages under the FLSA. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 715, 65 S.Ct. 895, 906, 89 L.Ed. 1296, 1314 (1945).

"primarily for the benefit of the employer," and therefore, found the peace officers' meal period compensable under the FLSA. The regulation governing meal periods provides "[b]ona fide meal periods are not worktime.... [T]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19(a). In cases such as this, the courts have developed a rule that if the employer spent his or her time "predominantly for the benefit of the employer," it is compensable. *Reimer*, 258 F.3d at 725. To determine whether the time spent is "predominantly for the benefit of the employer," the fact finder uses a "practical approach based on the realities of each case." *Id.*

The district court found the peace officers' meal time was predominantly for the benefit of the State because the State required the peace officers to stay in uniform, remain in radio contact, and respond to questions and calls for assistance. These facts standing alone do not support the district court's finding that the peace officers' meal time was predominantly for the benefit of the State. *See Avery v. City of Talladega*, 24 F.3d 1337, 1347 (11th Cir.1994) (holding officers who are free to spend their meal time in any way so long as they remain in uniform and leave their radios on during their meal time are not spending their meal periods predominantly for the benefit of the city); *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531, 536 (8th Cir.1993) (holding officers' meal period is not predominantly for the benefit of the employer even though the officers have to obtain clearance from headquarters before beginning their break, may be approached by members of the public while eating, are required to monitor their radios, and are required to respond to emergencies during their meal periods); *O'Hara v. Menino*, 253 F.Supp.2d 147, 157 (D.Mass.2003) (holding meal time is not

predominantly for the benefit of the employer even though officers must remain on call during their lunch breaks, the timing of the lunch breaks is restricted, and they may have to terminate their lunch period if an emergency arises).

The peace officers argue and our review of the record indicates the State imposes additional restrictions on the peace officers' meal time. These additional restrictions include the requirements that the peace officers cannot go home for their meal time; the peace officers are required to eat only at certain restaurants that are visible to the public; and the peace officers are not allowed to conduct personal business, other than perhaps going to a drive-up ATM machine or stopping at a cleaners to drop off or pick up their uniforms. The record also confirms the peace officers spend most of their meal time discussing patrol business with other officers, and that their meal time is quite often interrupted by the general public requesting directions or information. We believe the meal time of the peace officers is predominantly for the benefit of the State based on the additional restrictions the State imposes on the peace officers during their meal time, that the peace officers spend most of their meal time discussing patrol business with other officers, and that their meal time is quite often interrupted by the general public requesting directions or information. *See Lamon v. City of Shawnee*, 972 F.2d 1145, 1155–58 (10th Cir.1992) (holding although an erroneous instruction was given by the district court, police officers who were required to stay in radio contact during their meal period; respond to emergency calls, personnel shortages, citizens requests and inquiries; confront crimes committed in their presence; select a meal location within or in close proximity of the city; and abstain from personal errands or business during the meal time

was sufficient evidence to resubmit the case to a jury on the predominantly for the benefit of the employer test).

Even though we may draw different conclusions from the evidence, it is not insubstantial. *Sahu*, 537 N.W.2d at 676–77. The ultimate question is whether the evidence supports the finding actually made, not whether the evidence would support a different finding. *Id.* Using a practical approach based on the realities of the present case, a reasonable mind would accept the evidence as adequate to conclude the peace officers' meal time was predominately for the benefit of the State.

## X. Was the Statute of Limitations Tolled by the Filing of the Federal Action?

Under the FLSA, a cause of action must be commenced within two years after the cause of action accrues, except that an action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255. The district court found a willful violation. Thus, the district court determined the peace officers could recover damages for the three-year period preceding the tolling of the statute of limitations. The State did not appeal this ruling.

Federal law, including the federal equitable tolling doctrine, not state law, governs the tolling of the statute of limitations. *Moore Co. v. Sid Richardson Carbon & Gasoline Co.*, 347 F.2d 921, 922 (8th Cir.1965); *Abbott v. State*, 979 P.2d 994, 997 (Alaska 1999). The parties, however, disagree as to the date when the peace officers tolled the statute of limitations.

The State argues the peace officers tolled the statute in April 1996, when the peace officers filed their petition in state court.[5] The peace officers argue they tolled the statute when they filed their action in federal court on May 2, 1994,[6] because of the federal equitable tolling doctrine.

Originally, the peace officers filed their action in federal court seeking to establish their right to overtime compensation. Initially, the federal court granted the peace officers' motion for summary judgment on the merits of their claim and set a hearing on damages for a later date. On June 21, 1996, before the date set for the damage hearing, the Supreme Court filed *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), establishing the immunity of states under the Eleventh Amendment to be sued in federal court with respect to similar claims. *Seminole Tribe* overruled *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), under which the peace officers would have been allowed to maintain their action in federal court. *Seminole Tribe*, 517 U.S. at 72, 116 S.Ct. at 1131–32, 134 L.Ed.2d at 276–77. Based on *Seminole Tribe*, the federal district court dismissed the peace officers' action for lack of subject matter jurisdiction based on the Eleventh Amendment. *Raper*, 940 F.Supp. at 1421. The Eighth Circuit Court of Appeals affirmed the federal district court. *Raper v. Iowa*, 115 F.3d 623. In April 1996, pending a decision from the federal district court, the peace officers filed the present action in state court.

On appeal, the State makes two arguments concerning the non-applicability of the federal equitable tolling doctrine. It first argues this doctrine only applies to

---

5. Under the Iowa Rules of Civil Procedure, the filing of the petition commences the action. Iowa R. Civ. P. 48 (1996) (now renumbered as Iowa Rule of Civil Procedure 1.301).

6. Under the Federal Rules of Civil Procedure, the filing of the complaint commences the action. Fed.R.Civ.P. 3 (1994).

cases dismissed for improper venue, not for lack of subject matter jurisdiction. Second, the State argues even if the doctrine tolls the statute of limitations, it does not apply to this case because the State never waived its sovereign immunity to be sued in state court.

### A. Does the federal equitable tolling doctrine apply only to cases dismissed for improper venue?

■■■ The genesis of the equitable tolling doctrine is found in *Burnett v. New York Central R.R.*, 380 U.S. 424, 436, 85 S.Ct. 1050, 1058–59, 13 L.Ed.2d 941, 950 (1965). In *Burnett*, the plaintiff filed his federal employer's liability claim in state court. *Id.* at 424, 85 S.Ct. at 1052, 13 L.Ed.2d at 943. Although the state court had jurisdiction over the claim, the claim was dismissed because of improper venue. *Id.* at 425, 85 S.Ct. at 1053, 13 L.Ed.2d at 943. Plaintiff refiled in federal court eight days later but after the statute of limitations had run. *Id.* The federal district court dismissed the action as untimely. *Id.* On appeal, the Supreme Court adopted the federal common-law doctrine of equitable tolling, which tolls a federal statute of limitations on claims dismissed in one forum and promptly refiled in the proper forum as long as the defendant has proper service of process and the service adequately informed the defendant of the claim in the original forum.[7] *Id.* at 434–35, 85 S.Ct. at 1058, 13 L.Ed.2d at 949.

The State argues the equitable tolling doctrine only applies to cases dismissed for improper venue, not for jurisdictional defects. We disagree. Courts have applied the doctrine to cases dismissed due to jurisdictional defects. In *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 614 F.2d 1051, 1054–55 (5th Cir.1980), the Fifth Circuit relied on the reasoning in

*Burnett* to toll the statute of limitations in an action originally filed in a court that lacked jurisdiction. The Fifth Circuit found it was reasonable for the plaintiff to conclude the court had jurisdiction over the sunken treasure in the district where the plaintiff recovered it. *Id.* at 1054. Relying heavily on plaintiff's due diligence in filing the original claim and the notice it provided to the defendant, the court applied the doctrine of equitable tolling and allowed the plaintiff to proceed with the claim. *Id.* at 1054–55.

The Sixth Circuit in *Fox v. Eaton Corp.*, also relied on *Burnett* to toll the statute of limitations when the state court dismissed an action for lack of subject matter jurisdiction. 615 F.2d 716, 720–21 (6th Cir. 1980). In *Fox*, the plaintiff brought a Title VII action in state court within ninety days after she received her right-to-sue letter. *Id.* at 717. At the time she brought the action in state court, there were conflicting opinions as to whether the federal courts had exclusive jurisdiction over Title VII actions. *Id.* at 719–20. There was no controlling decision by the Ohio Supreme Court indicating that the federal courts had exclusive jurisdiction over Title VII actions. *Id.* at 720. At the trial level, the court entered judgment on the merits. *Id.* at 717. The court of appeals affirmed the trial court's decision on appeal. *Id.* On appeal to the Supreme Court of Ohio, the supreme court *sua sponte* held state courts do not have subject matter jurisdiction over Title VII matters. *Id.* Plaintiff refiled in federal court. *Id.* The federal district court dismissed the action as untimely, because plaintiff filed the action more than ninety days after she received her right to sue letter. *Id.* at 718. The Sixth Circuit concluded it would be impossible for the plaintiff, even with the assistance of her attorney, to predict the juris-

---

7. In this case, the State does not claim it did not receive proper notice or adequate notice of the peace officers' claims in the federal district court proceedings.

dictional theory the Ohio Supreme Court would adopt. *Id.* at 720. Because the plaintiff exercised great diligence in pursuing her claim and her only misfortune was the selection of an inappropriate forum, which she selected on a reasonable basis, the court found the ninety-day statute of limitation was tolled while the case was pending in state court. *Id.*

At the time the peace officers filed this action in federal court, the federal circuit courts deciding this issue consistently held *Union Gas* gave the federal courts subject matter jurisdiction over FLSA actions when a state is the defendant. *Brinkman v. Dep't of Corr.*, 21 F.3d 370, 371–72 (10th Cir.1994); *Reich v. New York*, 3 F.3d 581, 590 (2d Cir.1993); *Hale v. Arizona*, 993 F.2d 1387, 1391–92 (9th Cir.1993). At the time the peace officers filed this action in federal court, no person could reasonably predict the Supreme Court would overrule *Union Gas*. The peace officers' choice of forum was reasonable at the time they filed their action in federal court. The peace officers properly served process on the State in the federal court action and gave the State adequate notice of their claims. Under these facts, we believe the federal common-law doctrine of equitable tolling applies even though the federal courts dismissed their claims on jurisdictional grounds. *See Ahern v. State*, 244 A.D.2d 7, 676 N.Y.S.2d 232, 235 (1998) (holding the federal equitable tolling doctrine applies to an FLSA action refiled in state court after the action was dismissed from federal court for lack of subject matter jurisdiction).

**B. Even if the federal equitable tolling doctrine tolls the statute of limitations, did the State waive its sovereign immunity to be sued in state court?**

 The district court relied on *Ahern* to conclude the federal equitable tolling doctrine allows the peace officers to collect damages for the three-year period prior to filing the complaint in federal court. In *Ahern*, the plaintiffs refiled their FLSA action in state court after the federal court dismissed the action for lack of subject matter jurisdiction based on the Eleventh Amendment. *Id.* at 233. In reaching its decision, the New York court discussed sovereign immunity under the Eleventh Amendment and concluded the Eleventh Amendment, which gives the state immunity from being sued in federal court, did not apply to the state's ability to be sued in state court. *Id.* at 234. The New York court concluded Congress abrogated the state's sovereign immunity for an FLSA action brought in state court. *Id.* The *Ahern* court then applied the federal common-law doctrine of equitable tolling to toll the statute of limitations. *Id.* at 235.

Subsequent to *Ahern*, the Supreme Court decided the case of *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). In *Alden*, the Supreme Court noted the states do not derive sovereign immunity in state court from the Eleventh Amendment, but rather from the "fundamental aspect of sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ... except as altered by the plan of the Convention or certain constitutional Amendments." *Id.* at 713, 119 S.Ct. at 2246–47, 144 L.Ed.2d at 652. This sovereign immunity is the immunity retained by the states under the Tenth Amendment. The Supreme Court then concluded Congress could not abrogate a state's sovereign immunity preserved by the Tenth Amendment through Article I legislation, such as the FLSA. *Id.* at 712, 119 S.Ct. at 2246, 144 L.Ed.2d. at 652. After the Supreme Court decided *Alden*, the New York court agreed *Alden* effectively overruled

*Ahern* on the grounds New York did not waive its sovereign immunity preserved by the Tenth Amendment and did not consent to be sued in state court under the FLSA. *See Alston v. State,* 97 N.Y.2d 159, 737 N.Y.S.2d 45, 762 N.E.2d 923, 925–26 (2001).

The State argues the *Alden* decision, together with the Supreme Court decision of *Raygor v. Regents of the University of Minnesota,* 534 U.S. 533, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002), does not allow us to apply the federal equitable tolling doctrine to the peace officers' action, because the State has not waived its sovereign immunity to be sued in state court for an FLSA action. In *Raygor,* the court discussed the issue of sovereign immunity in the context of the federal savings clause,[8] 28 U.S.C. § 1367(d). *Id.* at 542, 122 S.Ct. at 1005, 152 L.Ed.2d at 37. The Supreme Court concluded the federal savings provision does not apply to a state unless the state has waived its sovereign immunity to be sued for the specific action in state court. *Id.* at 548, 122 S.Ct. at 1008, 152 L.Ed.2d at 41.

The determination we must make is whether the state has waived the sovereign immunity it enjoyed before the ratification of the Constitution to be sued in state court for violations of the FLSA. This analysis does not involve Eleventh Amendment immunity. In *Anthony,* we previously held:

> We are convinced that the statutory scheme for deriving pay plans has been implemented in a manner that includes FLSA overtime remuneration as compensation owed by an employer. Sections 91A.8 and 91A.10(3) provide an

*express consent* to sue in the Iowa courts for purposes of recovering any compensation thus owed.

632 N.W.2d at 902 (emphasis added). In other words, we have already determined the State waived its sovereign immunity by expressly consenting to be sued in state court for FLSA overtime remuneration. Because the State has abrogated its sovereign immunity to be sued in state court for compensation owed under the FLSA, *Alden* and *Raygor* are inapplicable and the federal equitable tolling doctrine allows the peace officers to recover damages for the three-year period preceding the date the action was filed in federal court. We, therefore, affirm the district court's judgment on this issue.

**XI. Did the District Court Err in Failing to Utilize the Eighty–Six Hour/Fourteen–Day 207(k) Work Period Allowed for Law Enforcement Personnel?**

Under the FLSA, an employer must pay an employee overtime at a rate of one and one-half times the regular rate at which the employee is employed for work in excess of forty hours per week. 29 U.S.C. § 207(a). Congress, however, adopted a special overtime provision for law enforcement employees. If a public employer adopts a work period consisting of at least seven days and up to twenty-eight days, an employer of a law enforcement officer is not required to pay overtime compensation on a forty-hour work week. 29 U.S.C. § 207(k). The regulations define a work period as "any established and regularly recurring period of work which, under the terms of the Act and legislative history,

---

8. 28 U.S.C. § 1367(d) provides:
 (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

cannot be less than seven consecutive days nor more than twenty-eight consecutive days." 29 C.F.R. § 553.224(a). A 207(k) work period "need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day." *Id.*

If an employer adopts a seven-day work period, the employer is not required to pay overtime until the employee worked more than forty-three hours during the seven-day work period. 29 C.F.R. § 553.230(b). If an employer adopts a fourteen-day work period, overtime compensation is not due until such time as the employee has worked more than eighty-six hours during the fourteen-day work period. *Id.* Finally, if an employer adopts a twenty-eight day work period, overtime compensation is not due until the employee has worked more than 171 hours during the twenty-eight-day work period. *Id.*

■ The State has the burden of proving the existence of the section 207(k) work period. *Barefield v. Vill. of Winnetka,* 81 F.3d 704, 710 (7th Cir.1996). An employer may establish a work period by a public declaration of intent to adopt a work period. *Spradling v. City of Tulsa,* 95 F.3d 1492, 1505 (10th Cir.1996). A public declaration is not necessary, however, as long as the employer can demonstrate it factually established a 207(k) work period, even if it did not have a 207(k) work period in mind when it adopted its scheduling. *Barefield,* 81 F.3d at 710.

■ The district court made the following findings regarding 207(k) work periods:

(1) The [State has] failed to prove that a 207(k) work period existed prior to November 5, 1995;

(2) The [State has] sufficiently proven that for the period from November 5, 1995 to November 15, 1995 a 7-

day work period was established pursuant to 207(k); and

(3) The [State has] sufficiently proven that for the period from November 15, 1995 to the present date, a 21-day work period was also established pursuant to 207(k).

We need only address the district court's first finding because the State's liability ended on November 5, 1995. Pursuant to the first finding, the district court found even though the officers had a fourteen-day pay period, the State presented no credible evidence that indicated the peace officers performed their work pursuant to a fourteen-day work period under section 207(k).

Substantial evidence supports this finding. In his order of November 5, 1995, the Commissioner intended to limit the future liability of the State from paying overtime compensation by adopting a seven-day work period for supervisory officers. By adopting a seven-day work period, the State did not have to pay overtime until a supervisory officer worked more than forty-three hours during that seven-day work period. On November 15, 1995, the Commissioner changed the seven-day work period to a twenty-one-day work period. At trial, the Commissioner acknowledged, "the longer the work period is, the more advantageous it is for the employer in paying overtime." As the district court noted, if the State established a fourteen-day work period prior to November 5, 1995, then shortening the work period to a seven-day work period on November 5 would be contrary to the express intent of the November 5 order. For these reasons, we will not disturb the district court's ruling on this issue.

## XII. Disposition.

We affirm the judgment of the district court in all respects except for its judg-

ment on the compensability of the drive time of the excluded peace officers. We, therefore, remand the case to the district court to determine the damages, if any, for the drive time of the peace officers consistent with this decision.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except CARTER and STREIT, JJ., who concur in part and dissent in part, and CADY, J., who individually concurs in part and dissents in part.

CARTER, Justice (concurring in part and dissenting in part).

I would affirm the judgment of the district court in its entirety.

STREIT, J., joins this concurrence in part and dissent in part.

CADY, Justice (concurring in part and dissenting in part).

I respectfully dissent. While I agree with the majority in most respects, I have two points of disagreement.

First, the majority finds substantial evidence to support the district court's conclusion that "the peace officers' meal period was undertaken 'primarily for the benefit of the employer.'" I believe the majority reaches this result by acknowledging, but then not applying, the proper test.

In order to qualify as a bona fide, noncompensable meal period, the relevant Department of Labor regulation provides, "The employee must be completely relieved from duty for the purposes of eating regular meals.... The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19(a). However, the majority of federal circuit courts have rejected the "completely relieved of duty" test to comport with the Supreme Court's definition of work. *Harris v. City of Boston,* 253 F.Supp.2d 136, 143 (D.Mass.2003); *see, e.g., Henson v. Pulaski County Sheriff Dep't,* 6 F.3d 531, 534 (8th Cir.1993) ("We conclude that the predominantly-for-the-benefit-of-the-employer standard provides the appropriate test for determining the compensability of meal periods under the FLSA. Established in the earliest Supreme Court cases interpreting the FLSA, this standard comports with the Supreme Court's admonition to use a practical, realistic approach under the unique circumstances of each case when deciding whether certain activities constitute compensable work." (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944); *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118, 124 (1944)). Thus, the test is not whether the officers were completely relieved of duty during their meal periods, but "whether the restrictions imposed by the employer on an officer's disposition of a meal break are such that the break is *predominantly* for the benefit of the employer." *Avery v. City of Talladega,* 24 F.3d 1337, 1345 (11th Cir.1994) (emphasis added); *accord Hartsell v. Dr. Pepper Bottling Co.,* 207 F.3d 269, 274 (5th Cir.2000); *Roy v. County of Lexington,* 141 F.3d 533, 544 (4th Cir.1998); *Reich v. S. New England Telecomms. Corp.,* 121 F.3d 58, 64 (C.A.2, 1997); *Leahy v. City of Chicago,* 96 F.3d 228, 230 n. 2 (7th Cir.1996); *Henson,* 6 F.3d at 534; *Lamon v. City of Shawnee,* 972 F.2d 1145, 1155 (10th Cir.1992).

Courts rely upon various factors in utilizing the predominant-benefit test, including

the limitations and restrictions placed upon the employees, the extent to which those restrictions benefit the employer,

the duties for which the employee is held responsible during the meal period, and the frequency in which the meal periods are interrupted.

*Bernard v. IBP, Inc.*, 154 F.3d 259, 266 (5th Cir.1998) (citing *Henson*, 6 F.3d at 534). At least one court has observed that the last factor is most important. *See O'Hara v. Menino*, 253 F.Supp.2d 147, 157 (D.Mass.2003) ("[T]he key is whether the lunch period is regularly interrupted."); *see also* 3 Empl. Coordinator (RIA) *Compensation* § 23:11 (2004) ("[I]t is the frequency and extent of mealtime interruptions, rather than their mere possibility, that will influence the ultimate determination of overtime entitlement."). In addition, several courts have explained that meal periods are not compensable if the employee is able to "comfortably and adequately spend the mealtime." *Leahy*, 96 F.3d at 231 n. 2 (citing *Lamon*, 972 F.2d at 1155–56); *accord Avery*, 24 F.3d at 1347; *Alexander v. City of Chicago*, 994 F.2d 333, 337 (7th Cir.1993).

The record in this case shows that during meal periods, the officers were required to stay in uniform, remain in radio contact, and respond to questions and calls for assistance. The majority acknowledges that these restrictions do not convert the meal periods into hours worked. *See Roy*, 141 F.3d at 545–46 (finding meal periods not compensable when employees could only be interrupted in emergencies (and in fact were interrupted only 27% of the time) and "could go anywhere within their 82 square-mile response zones during mealtime"); *Barefield v. Vill. of Winnetka*, 81 F.3d 704, 710 (7th Cir.1996) ("[T]he only restriction on the civilian plaintiffs meal period was that they had to remain in the police department building or in radio contact with the building in case of an emergency. Therefore, the meal periods are not compensable under the FLSA...."); *Avery*, 24 F.3d at 1347 (The City undoubt-

edly benefits from the restrictions it imposes on the plaintiffs meal breaks, but the fact that the City benefits from the restrictions does not mean that the plaintiffs meal breaks are predominantly for the City's benefit. The overwhelming testimony of the patrol officers and patrol lieutenants themselves is that they are free to spend their meal breaks in any way they wish so long as they remain in uniform, leave their radios on, and do not leave the jurisdiction. The detectives need simply leave a phone number where they can be reached in case of an emergency. The plaintiffs may return home, stop at the bank, pick up their dry cleaning, or run other personal errands. In sum, the plaintiffs are able to "comfortably and adequately pass[ ] the mealtime." (Footnote and citation omitted.)); *Henson*, 6 F.3d at 536 ("The only potential restrictions on the officers use of their meal periods for their own purposes arise from the possibility that citizens might ask them questions and from the monitoring of their radios for emergency calls to return to service. We conclude that these restrictions could not support a finding that the patrol officers spend their meal breaks predominantly for the benefit of their employer.").

However, the majority then goes on to find the officers' meal periods compensable based on the facts that they cannot go home for meals, are required to eat at visible restaurants, are prohibited from conducting some personal business, "spend most of their meal time discussing patrol business," and are "quite often interrupted by the general public requesting directions or information." I agree there may be substantial evidence to support most of these findings; however, I do not agree that these additional matters mean the time is spent *predominantly* for the benefit of their employer. For the most part, the officers can eat when they want and

where they want. They can eat with whom they want and can talk about what they want. It is irrelevant that they usually choose to discuss business matters. Moreover, there was no evidence to define the frequency or extent of the interruptions, only that they would occur from time to time. I believe that using "a practical approach based on the realities of [this] case," *Reimer v. Champion Healthcare Corp.,* 258 F.3d 720, 725 (8th Cir.2001) (citation omitted), and considering the purpose of mealtime, it cannot be said that the officers' mealtime was predominantly for the benefit of their employer. The officers were still able to "comfortably and adequately" utilize the mealtime for its general intended purpose. *Avery,* 24 F.3d at 1347. Any imposition was minimal. Accordingly, I would reverse the judgment of the district court on this issue.

Second, I take issue with the majority's analysis of the drive time issue. The district court found drive time was not compensable because there was no custom to treat drive time as work time. On our review at law, the majority finds no substantial evidence to support this finding. It concludes a custom must have existed because the Commissioner would not have otherwise issued an order declaring drive time would not be compensable. The logic employed by the majority to reach this conclusion is faulty. Orders are not issued only when necessary to change some existing principle. Moreover, a declared desire to limit future liability for overtime after the filing of a lawsuit does not constitute an acknowledgement of past liability for drive time compensation. Under our review at law, we should not draw questionable conclusions from the evidence to support a finding contrary to the trial court. The trial court found there was no custom to treat drive time as work time for these officers because the department considered the officers in question to be salaried employees during the same period of time the officers claimed a custom was established. Thus, the department could not have established a custom to do something it never actually contemplated. There was substantial evidence to support the decision of the trial court.